PATTERSON v. BUSHONG et al.  (No. 8605.)

(Court of Civil Appeals of Texas.  Ft. Worth.
June 4, 1917.  Rehearing Denied
June 30, 1917.)

1. APPEAL AND ERROR &⇒281(1)—SCOPE OF REVIEW—PRESERVATION OF EXCEPTIONS.

Assignments of error not directed to the attention of the trial court in the motion for new trial cannot be considered in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, and rules 101 and 101a (159 S. W. xi).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1650–1661, 3024, 3281.]

2. APPEAL AND ERROR &⇒742(5)—SCOPE OF REVIEW—PRESERVATION OF EXCEPTIONS.

Assignments of error to the refusal to submit issues to the jury cannot be considered in the absence of the evidence in the statement under the assignments to show the materiality of such issues.

3. VENDOR AND PURCHASER &⇒37(4)—FRAUDULENT REPRESENTATIONS—RELIANCE—RIGHT TO RELY.

Where the agent of the purchaser inspected the land sold and secured the opinions of persons in the neighborhood not influenced by the vendor as to the value of the land, reliance on the statement of the vendor's agent as to the value of the land per acre cannot be claimed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 57.]

4. VENDOR AND PURCHASER &⇒37(1)—FRAUDULENT REPRESENTATIONS—RELIANCE—RIGHT TO RELY.

One who undertakes to discover the truth of representations made to him is charged with the knowledge of everything which a proper investigation would disclose, and would not be justified in acting upon fraudulent representations merely because they were made to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 54.]

5. PRINCIPAL AND AGENT &⇒177(4)—KNOWLEDGE OF AGENT.

One who constituted another her agent to purchase land for her was bound by such agent's knowledge as to the character and value of the land.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 676.]

6. TRIAL &⇒114—ARGUMENT OF COUNSEL.

In a case submitted on special issues the counsel should not discuss in their argument to the jury the effect on the judgment to be rendered by the court of the findings of the jury on the issues involved.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 275–278, 296.]

Appeal from District Court, Tarrant County; Mike E. Smith, Special Judge.

Suit by Mrs. Hattie J. Bushong and husband against G. R. Patterson. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Samuels & Brown and Durward McDonald, all of Ft. Worth, for appellant. Peden & Lipscomb, Slay & Simon, and Theodore Mack, all of Ft. Worth, for appellees.

BUCK, J.  On January 15, 1915, Hattie J. Bushong, joined by her husband, J. L. Bushong, sued G. R. Patterson, and for cause of action alleged: That plaintiff Hattie J. Bushong was the lawful owner in her own separate right of certain described property situated in Tarrant county, consisting of hotel property known as the "Mohawk Hotel," residence property on Pruitt street, both in the city of Ft. Worth, and 188.2 acres known and described as the T. C. U. property, the latter being a farm upon which plaintiffs resided, used as a farm and dairy. Plaintiff alleged that the market value of said Mohawk Hotel property, over and above all incumbrances then existing, was $35,000, and the market value of the other two described tracts was $22,500, over and above all incumbrances then existing; that G. R. Patterson was the owner of 3,000 acres of land situated in Dimmitt county, described by metes and bounds, and that said Patterson, and his agents, servants, etc., through false and fraudulent representations induced plaintiff Hattie J. Bushong to convey to him by warranty deeds all the land situated in Tarrant county above described in exchange for the Dimmitt county lands, and by said false and fraudulent representations induced her to execute and deliver to Patterson notes aggregating $62,500, said notes being made payable to said Patterson.

The specific representation relied on, and which plaintiff alleged to have been made to her by defendant, Patterson, or his agent, and which she alleged to have been fraudulent, was that the Dimmitt county land was actually worth the sum of $40 per acre at the time of the making of said trade or exchange of properties, and that said representation of value was a representation of fact and was false and fraudulent, and that the land was worth not more than $10 per acre. Other allegations were made as to asserted fraudulent representations made by defendant, or his agents, to the effect that lands of the same character and kind and in the vicinity of defendant's land, which he sold to plaintiff, were selling at the time of said transaction for $40 to $60 per acre, etc., but for the purposes of this opinion we limit our discussion to the allegation as to the alleged statement by defendant as to what the land was actually worth.

Plaintiff alleged that she resided in Ft. Worth and was not acquainted with the value of lands in the vicinity of the Dimmitt county land, and lived some 400 miles distant from said land, and that she relied particularly upon the alleged representation made to her by defendant, or his agents, as to the

---

said value. It was further alleged that since the exchange of lands had been effected defendant had negotiated said notes amounting to $62,500 to one J. B. Wilson, who was made defendant, and had placed it beyond the power of the court to award her a rescission of said contract and sale and a cancellation of said notes. But it was averred that the defendant Wilson had other security given to him by said defendant Patterson to secure the payment of Patterson's debt to him, and plaintiff prayed that Wilson be required to exhaust such other security before using said notes executed by plaintiff to satisfy said debt. It was further alleged that defendant Patterson was insolvent, and plaintiff prayed for the fixing of an equitable lien on the property conveyed by her to Patterson to secure her in the payment of such damages as might be awarded.

Defendant Patterson answered by general demurrer and general denial, and specially denied any fraudulent purpose on his part, but admitted that he had stated and represented to the plaintiff that in his opinion the Dimmitt county land was worth $40 per acre, and averred that said land had really a higher money value than $40, if improved and subdivided, properly advertised, etc. He further pleaded negotiations between him, represented by his agent, A. R. Forsyth, a real estate broker of San Antonio, Tex., and the plaintiffs, represented by the Winters Realty Company and the Winter-Foster Company, each company in turn also being represented by H. E. Barnett. He further alleged the execution by plaintiff of one promissory note for $25,000, dated November 3, 1913, in which was reserved a vendor's lien on the south 1,500 acres of the Dimmitt county land, and a further note in the sum of $37,500, dated December 24, 1913, retaining a vendor's lien on the north one-half of the Dimmitt county 3,000-acre tract, and the failure of plaintiffs to pay the interest due on said notes, and defendant prayed for foreclosure of said lien on the above two tracts of land, and that it be sold to satisfy his debt. He further pleaded that on September 18, 1914, he had delivered as collateral to J. B. Wilson, of Dallas county, Tex., the notes sued upon, among other securities, to secure a certain loan of $50,000 due five years after date, bearing interest at 8 per cent., and that he, defendant Patterson, prosecuted this action for himself and for said Wilson, as their interest might appear, and prayed for relief for himself and Wilson, generally and specially.

Further pleadings were filed in the case, but we think we have stated sufficient above to indicate the issues presented.

On July 6, 1915, the cause came on for trial and was submitted to the jury on special issues, which were answered substantially for defendant Patterson. Verdict was received in open court by the judge and ordered recorded, and defendant Patterson filed his motion for judgment, which motion was by the court overruled, "because the court is of the opinion that the findings of the jury are so conflicting that no valid judgment can be rendered thereon." Defendant excepted to this order, and on July 13, 1916, filed his assignments of error directed to the action of the court in refusing judgment.

On April 4, 1916, plaintiff filed her second amended original petition covering some 18 pages of the transcript. On April 10th defendant Patterson filed his second amended answer, covering some 12 pages of the transcript. The cause was submitted to the jury on special issues again, and the jury found: (1) That the property conveyed by Mrs. Bushong to the defendant Patterson was her own separate property; (2) that Mrs. Bushong "prior to the time she conveyed said property, authorized her husband, J. L. Bushong, either alone or in conjunction with the J. N. Winters Realty Company, or H. E. Barnett, to represent her in the transaction leading up to and culminating in the transactions whereby there was conveyed to said Patterson the property situated in and near Ft. Worth, as described in the pleadings"; (3) that the defendant G. R. Patterson, through his agent, A. R. Forsyth, represented to plaintiff Hattie J. Bushong at and before the execution of the deeds and notes by her that the land belonging to said Patterson in Dimmitt county was on November 3 and December 31, 1913, worth $40 per acre, and that such representation was made as a statement of a fact and was false; (4) that Mrs. Bushong believed said representations to be true and relied thereon, and that said representations induced her to execute the deeds and notes aforesaid; (5) that the reasonable market value of the south 1,500 acres of the Dimmitt county land on November 3, 1913, was $15 per acre, and the reasonable value of the north 1,500 acres on December 31, 1913, was $17 per acre; (6) that the reasonable market value of the Mohawk Hotel property on November 3, 1913, was $50,000, and the reasonable market value of the Pruitt street property was $12,000, and the reasonable market value of the T. C. U. farm on December 31, 1913, was $200 per acre. Upon this verdict the court rendered judgment for plaintiff against defendant Patterson in the sum of $50,500, being the difference in value found between the property conveyed to Patterson by Mrs. Bushong, including the $62,500 notes, and the value of the property conveyed by Patterson to plaintiff, with 6 per cent. interest from date and costs of suit. The judgment further decreed plaintiff an equitable lien upon the property conveyed by Hattie J. Bushong and husband to the defendant Patterson. Judgment was given to defendant Patterson against J. L. Bushong and Hattie J. Bushong for $14,033.-80, said judgment providing that defendant should not be entitled to process to enforce the collection thereof unless and until he

satisfied the judgment in favor of the plaintiff Hattie J. Bushong against him for the sum of $50,500, either by placing a credit to that extent on the notes of the said Hattie J. Bushong, transferred by Patterson to Wilson, or by paying off and discharging the indebtedness due by him (Patterson) to said Wilson. It was further provided that, should Patterson make default in the payment of interest maturing on the $50,000 note held by Wilson, dated September 18, 1914, and should said Wilson lawfully and because of said default elect to declare said note due and payable, or if said defendant Patterson should make default in the payment of principal or interest, or any part of same, of the indebtedness now existing upon the property conveyed by plaintiffs to the defendant Patterson, and the holder or holders of said indebtedness secured by said liens on said property theretofore conveyed by the Bushongs to Patterson should, because of said failure on Patterson's part, elect to declare said indebtedness due, then said Hattie J. Bushong should be entitled to an order of sale against defendant Patterson directing the sale of all the property transferred and conveyed by the said Bushongs to Patterson, and upon which an equitable lien was fixed and enforced by the judgment in favor of said Hattie J. Bushong. There were other provisions of the judgment not necessary here to state. From this judgment defendant has prosecuted an appeal.

The record in this case is very voluminous, the transcript consisting of some 189 pages, the statement of facts of 335 pages, and the briefs of appellant and appellee of some 140 pages each, and we have devoted considerable time and labor to a study of the record and the examination of authorities cited, and investigation as to the tenability of the many contentions of error made by appellant.

[1] The first six assignments in appellant's brief are directed to alleged errors with reference to the first hearing, but we hold that such assignments are not presented in a form and under circumstances which justify their consideration, inasmuch as the matters complained of were not directed to the attention of the trial court in appellant's motion for new trial. The assignments of error urged in the motion for new trial and in the trial court must constitute the assignments in the Court of Appeals. Vernon's Sayles' Texas Civil Statutes, art. 1612; Rules 101, 101a, for District and County Courts (159 S. W. xi). Hence all of these assignments must be overruled.

[2] In a group of assignments error is urged to the failure to submit various tendered special issues, but in some of these, notably the ninth, the evidence is undisputed as to the issue presented; in others, for instance the eleventh and seventeenth, no evidence is quoted in the statement under the assignments showing the materiality of the issues, or that they were in the case by reason of facts testified to or evidence offered, and therefore we cannot hold that there was error in the refusal of the court to submit such issues. Dermott Town-Site Co. v. Wooten, 193 S. W. 214.

Another group of assignments is directed to alleged errors in the judgment and in the relief awarded appellee, and the burdens and restrictions placed upon appellant in the satisfaction of the judgment awarded him, but we are of the opinion that, if the court was authorized under the facts in the case and under the findings of the jury to render judgment for the plaintiff below at all, no successful attack can be made as to the provisions of the judgment concerning which complaint is made. It appears the judgment was well considered and carefully written, and that the trial court, having concluded that the verdict of the jury authorized a judgment for plaintiff, sedulously guarded the rights of the several parties affected by the judgment.

The evidence shows that much of the property, if not all, conveyed by the Bushongs to Patterson, was the separate estate of Mrs. Bushong; that A. R. Forsyth, agent for Patterson, and in company with Patterson, was in Ft. Worth some time during the year 1913, and Forsyth went to the office of the Winters Realty Company and was introduced to Mr. Barnett, of that company. Mention was made by Forsyth of this Dimmitt county land owned by his client, and Barnett stated that he might interest Judge Bushong in such a deal. The two went out to see Bushong, and gave him a description of the land, and then they, in company with Patterson, went to see the Ft. Worth and Tarrant county property owned by the Bushongs. Patterson finally rejected the offer and declined to trade, and he and Forsyth returned to San Antonio. A few days later, at the instance of Bushong, Barnett went to San Antonio, and there met Forsyth, and renewed negotiations concerning the proposed trade. Patterson was out of the city, and Barnett returned to Ft. Worth without seeing him. Later Bushong and Barnett went to San Antonio, and there were joined by Forsyth, and the three went out to see the Dimmitt county land. They looked over it carefully, and Barnett and Bushong, together and separately, talked to various persons on the land and to others owning or living on adjacent lands, and living in the town of Carrizo Springs, near by. Upon their return to Carrizo Springs they went to see Patterson, who was sick in a hotel there, and they agreed upon and prepared the written contract of an exchange of the south one-half of the 3,000 acres for the Bushong property; Bushong signing said contract for himself and as agent for his wife, Mrs. Hattie J. Bushong. Bushong and Barnett returned to Ft. Worth, and in due

course of time abstracts of title were exchanged for examination. Titles having been straightened out satisfactorily to Patterson and Bushong in the early part of November, 1913, Patterson and Forsyth came to Ft. Worth and met Barnett and Bushong. The deeds having been prepared at the request of Judge Bushong, Messrs. Barnett and Forsyth went out in their car to the T. C. U. farm, where the Bushongs resided, to secure the signature of Mrs. Bushong to the deed. This appears to be the first time that Forsyth had met Mrs. Bushong. They all returned to Ft. Worth, and went to Judge Bushong's office, where the deeds were executed; Patterson executing a deed to the south 1,500 acres, and the Bushongs conveying to Patterson the Mohawk Hotel, at a recited consideration of $70,000, and upon which there was an incumbrance of $32,000, and the Pruitt street property and the T. C. U. farm property. Mrs. Bushong testified that at this time she had not met Mr. Patterson. She testified that at the farm that morning, and perhaps later after she came to Ft. Worth, Forsyth told her that the Dimmitt county land was worth $40 an acre, and that other land was selling in that vicinity for $50 and $60 an acre, etc. She testified that she relied on the statement as to the value of the land, and would not have made the exchange of properties except for such reliance. Forsyth admitted that he told her that the land was worth $40 an acre, but claimed that such statement was a mere expression of opinion, and that he believed at the time of the trial that the land was worth that much. Patterson testified that he authorized Forsyth to state to prospective purchasers that the land was worth $40 an acre. Later the north one-half of the 3,000-acre tract was sold by Patterson to the Bushongs, the deed to the south one-half being dated November 6, 1913, and the deed to the north one-half being dated December 31, 1913, both deeds to the property of the Bushongs given in part exchange for the Dimmitt county land being signed by J. L. and Hattie J. Bushong and properly executed and acknowledged.

The jury found that Patterson, through his agent, Forsyth, represented to Mrs. Bushong before the execution of the deeds and notes by her that the land conveyed by Patterson to the Bushongs was on November 3d and December 31st worth $40 per acre, and that such representation was made as the statement of a fact, and that Mrs. Bushong believed such statement to be true and relied thereon, and that such statement was false; that the reasonable market value was $15 an acre for the south 1,500 acres and $17 an acre for the north 1,500 acres.

No attack is made by appellant on the findings of the jury, though he does allege error in the judgment rendered, and in the submission of the issues: (1) As to whether said alleged representations were false or true; (2) as to whether Mrs. Bushong believed the same to be true; (3) as to whether she relied thereon; (4) whether said representations induced her to execute the deeds and notes to the defendant Patterson.

The controlling question presented by these several assignments is whether Mrs. Bushong had the right to rely upon the statements of the agent, Forsyth, that the Dimmitt county land was worth $40 an acre. As before stated, the evidence shows that the renewal of negotiations of trade between the Bushongs and Patterson was initiated by Judge Bushong. After the first visit of Patterson, accompanied by Forsyth, to Ft. Worth with reference to the proposed deal, and after the failure of agreement of the parties, and Patterson had returned home, it was Bushong who sent his selected agent, Barnett, to San Antonio to reopen negotiations and to try to effect a trade. Failing to see Patterson, who was out of the city, Barnett returned to Ft. Worth, and later he and Bushong went to San Antonio, and then to Dimmitt county, to inspect the land. The evidence shows that this inspection was thorough, and that both Bushong and Barnett talked freely with persons who were likely to know and who they thought were acquainted with the local conditions and the character and value of the lands under investigation. There is nothing to indicate that Patterson, who was sick in a hotel at Carrizo Springs, and did not go with the party out to see the land, said anything or did anything to mislead Bushong or Barnett in any way, or that Forsyth did anything to prevent a thorough investigation on the part of Bushong and Barnett. The land was there open to inspection, and it is not even contended by appellee that the persons in Dimmitt county to whom Bushong and Barnett talked, and with whom they consulted, were sought to be influenced, in giving their opinions, by Patterson or Forsyth, or that they did not truthfully and impartially disclose the actual conditions existing as they viewed them. The two parties to the negotiations were dealing at arm's length; no trust or fiduciary relation existed between them.

[3] Under the facts and conditions presented, it could not reasonably be claimed that, if Forsyth at that time had stated to Bushong that the land was worth $40 an acre, Bushong would have been justified in relying on such statement as an averment of an existing fact, or as a basis of fraud. It is said in 12 R. C. L. p. 244, that:

"As a general rule, in order to constitute actionable fraud, a false representation must relate to a matter of fact, and such fact must be one which exists in the present or which has existed in the past. It must also relate to a fact which is susceptible of knowledge; otherwise there is nothing in relation to which the persons making it could state what he knew to be untrue. Generally, therefore, fraud cannot be predicated upon the mere expression of an opinion which is understood to be only such or

cannot reasonably be understood to be anything else, nor upon representations in regard to matters of estimate or judgment. The person to whom such statements are made has no right to rely upon them, and does so at his peril, nor can it be supposed that they influenced his judgment."

On page 250, Id., the text says:

"Mere general commendations of property sought to be sold, commonly known as trade talk, dealers' talk, seller's statements, or puffing, do not amount to actionable misrepresentations where the parties deal at arm's length, and have equal means of information and are equally qualified to judge of the value of the property sold. This rule is based on the universal practice of the seller to recommend the article or thing offered for sale and to employ more or less extravagant language in connection therewith. The law does not hold him to a strict accountability for those vague commendations of his wares which manifestly are open to difference of opinion, and which do not imply untrue assertions concerning matters of direct observation, nor has the buyer any right to rely on such statements. It has even been held that such talk will not render the seller liable in damages, although he acts in bad faith. Some of the statements to which the general rule has been applied are: Representations as to the advantages of a purchase; advice by a vendee to the vendor to accept the last chance to get his money; statements by the agent of one bidding for a contract that his bid for the work is as low as the work can be done, and that there is no profit in it at that price; and exaggerated statements as to the value or quality of property, and the like."

On page 253 of the same work is found the following language:

"Further illustrations of the rule are that fraud cannot be based upon representations concerning the future value or profitableness or prospects of a business, such as representations of future insolvency; nor upon representations as to the future value of property, or as to future prospects of gain," etc.

See Oneal v. Weisman, 39 Tex. Civ. App. 592, 88 S. W. 290; Slaughter v. Gerson, 13 Wall. 379, 20 L. Ed. 627.

[4] One who undertakes to discover the truth of representations made to him is charged with the knowledge of everything which a proper investigation would disclose, and would not be justified in acting upon fraudulent representations merely because they were made to him. Newman v. Lyman et al., 165 S. W. 136, writ denied 170 S. W. xviii; Kelley v. Peeples, 192 Mo. App. 435, 182 S. W. 809.

[5] The jury having found in answer to the issue submitted that Mrs. Bushong, prior to the time she conveyed her property to Patterson, authorized her husband, J. L. Bushong, either alone or in conjunction with the Winters Realty Company, or H. E. Barnett, to represent her in the transaction leading up to and culminating in both deals of exchange and conveyance, it follows that she was charged with the knowledge acquired and possessed during the course of their agency by her selected agents as to the character and value of the Dimmitt county land. 1 Mechem on Agency, § 170; 2 Mechem on Agency, § 1802 et seq.

The good faith of Forsyth in stating to Mrs. Bushong that the land was worth $40 an acre seems not to have been questioned. At least his statement that in so stating it was the expression of an honest opinion is not controverted, and the court sustained the objections of plaintiff, as shown by the fourteenth and fifteenth assignments, to the admission of testimony as to the price that Patterson had paid for the Dimmitt county land, and no issue was submitted as to the good faith of the statement as to value made by Forsyth. This statement is made in view of the conflict of authority as to whether an expression of an opinion is rendered actionable by the existence of a fraudulent intent. See 12 R. C. L. p. 249.

Under the facts disclosed by the record, and in view of the finding of the jury that Mrs. Bushong authorized her husband and others named to represent her in the negotiations leading up to and culminating in the exchange of properties, we have concluded that Mrs. Bushong was not justified in relying on the statement of Forsyth as to the value of the land and in accepting it as a statement of a material fact. Mrs. Bushong's testimony strongly indicates that she is a woman of large business experience and superior business sagacity, and that through her chosen agents, prior to the culmination of the trades mentioned, she made as full an investigation as she thought proper as to the desirability of the proposed trades and the value of the land which she was purchasing. Hence we have concluded that the court erred, as complained of in the seventh assignment, in rendering judgment in favor of the plaintiff upon the evidence submitted and the facts found by the jury. At best, the finding of the jury as to the agency of plaintiff's husband, the real estate company, and Barnett, and the findings as to her reliance on the statements of value alleged to have been made by Forsyth, are conflicting, and do not form the proper basis for the judgment rendered; for if, under the circumstances shown, Mrs. Bushong investigated fully and so far as she desired, through her selected agents, the lands to be purchased, in law she would have no right to rely on the representations made by the other party's agent concerning the value of the land.

[6] We are also of the opinion that the argument of counsel for plaintiff complained of in the twenty-third assignment presents error. The counsel used the following language:

"Gentlemen of the jury, as to whether Forsyth stated that the land was worth $40 per acre as a statement of fact or as his opinion is very important, and to illustrate: If I trade horses with you and tell you that the horse is 5 years old, but as a fact he is 14 years old, and the horse is down in Dimmitt county, *the court says* [italics ours] I can recover damages for the misrepresentation. He made this statement as a fact, and not as his opinion. This matter of opinion was an afterthought."

In a case submitted on special issues the counsel should not discuss in their argument

to the jury the effect on the judgment to be rendered by the court of the findings of the jury on the issues tendered. It is true the bill of exception states that upon the objection of defendant's counsel to the remarks of the counsel for plaintiffs here complained of "the court stopped counsel for plaintiffs, and instructed the jury that it was their province to answer the issues to them submitted as questions of fact, regardless of their opinion as to the law, and that it was the duty of the court to apply the law to the facts as found by the jury," but the court declined to withdraw the case from the jury as requested by the defendant. While we are not prepared to say that, under the circumstances related, we would feel bound to reverse the judgment rendered upon this error alone, yet the error is apparent, and we do not feel satisfied that the instruction of the court to the jury removed entirely the natural and probable injurious effects of the improper argument. Fain v. Nelms, 156 S. W. 281; T. & P. Ry. Co. v. Rasmussen, 181 S. W. 212, 217; G., H. & H. Ry. Co. v. Hodnett, 182 S. W. 7.

For the reasons indicated the judgment of the trial court is reversed, and the cause remanded.