## HOYT et al. v. FIRST NAT. BANK OF CHESTER, W. VA., et al.*
### (No. 10035.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 14, 1922. Rehearing Denied Dec. 2, 1922.)

**1. Mines and minerals ⬅️74 — Findings of fraud in sale in action on notes of buyers of lease held sufficient to serve as basis for relief sought by them.**

In an action on notes given by defendants, buyers of an oil and gas lease, findings of fraud in the sale of the lease, in that plaintiff represented that he was in possession of the land in controversy, and that no adverse claim of title to the property except such claim as the state of Oklahoma might have, or placer mining claims, and that there was no one asserting any claim of possession of the property,

---

were sufficient to serve as a proper basis for relief sought by defendants, notwithstanding the further finding to the effect that an oil and refining company had no title to the property.

**2. Mines and minerals ⬦➔74—Fact that independent investigation of title of lease made by buyers held not bar to defense of fraud.**

The fact that buyers made an independent investigation of the title to an oil and gas lease before acceptance *held* not a bar to the defense of fraudulent representations by the seller suing on notes for the price.

**3. Fraud ⬦➔14(1)—Representation of fact defined; "fraudulent misrepresentation."**

Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraudulent Misrepresentation.]

**4. Contracts ⬦➔94(5)—Material misrepresentations relied upon by another constitute fraud.**

A material misrepresentation of fact which is relied upon by another and induces him to enter into a contract furnishes a sufficient basis for rescission of the contract at the instance of the person deceived, even though the misrepresentation is made in good faith and with no intention to deceive the other person, and the one making such fraudulent representation cannot be heard to say that the person deceived was guilty of negligence precluding a recovery by relying upon the truth of such misrepresentations without making an independent investigation as to the truth or falsity thereof.

**5. Fraud ⬦➔22(1) — Negligence in failing to discover fraud no defense.**

One guilty of fraudulent representations cannot defeat a recovery based thereon by the defense that the one whom he has thus defrauded has been guilty of negligence in failing to discover the fraud, especially where the one guilty of such representations is in a better position to know the truth than the one who relies upon them.

**6. Vendor and purchaser ⬦➔33 — Agreement that purchaser could waive defects to title does not preclude recovery if entire contract fraudulent.**

That a contract contains a stipulation in effect that one of the parties could waive any defects or objections to the title of the property which the other agreed to convey to them does not preclude a recovery by them if the entire contract was procured by fraudulent representations.

**7. Contracts ⬦➔270(1)—One knowing of right to rescind contract cannot wait until suit to set up grounds.**

Where a person knows that he is entitled to rescind a contract, he cannot wait until suit is brought for payment or other enforcement of the contract, and then set up his grounds of rescission, or, at least, such a course is regarded with great disfavor by the courts if there had been any considerable lapse of time since the discovery of the fact.

**8. Mines and minerals ⬦➔74—Tender of lease in supplemental pleading by defendants sued on notes for lease and seeking recovery for fraud in cross-action held not to preclude recovery by them.**

In an action on notes given for the purchase of an oil and gas lease, wherein defendants sought in a cross-action to recover for fraud in the sale of the lease, the fact that defendants tendered a return of the lease in their supplemental petition did not necessarily preclude a recovery by them, where the fraud had been theretofore specifically pleaded, and the relief sought was predicated thereon, and in their pleadings defendants prayed for general and special relief in law and equity.

Appeal from District Court, Wichita County; H. F. Weldon, Judge.

Action by the First National Bank of Chester, W. Va., and another, wherein Phillip Freshwater was substituted as plaintiff, against F. C. Hoyt and another. From judgment for the substituted plaintiff, defendants appeal. Reversed and rendered.

Campbell & Campbell, of Wichita, Kan., and Cox & Keys, of Wichita Falls, for appellants.

Weeks, Morrow & Francis, of Wichita Falls, for appellees.

DUNKLIN, J. Under and by virtue of an act of the Legislature of the state of Texas, approved March 16, 1917, the same appearing as chapter 83, Acts of 1917 (Vernon's Ann. Civ. St. Supp. 1918 and 1922, art. 5904 et seq.), the acting commissioner general of the land office of the state issued to N. G. Poe a permit to prospect for and acquire petroleum and natural gas on and from a certain tract of land comprising some 1,361 acres described as being situated in Wichita county, Tex., and bordering on the south bank of Red river. That permit may be properly designated as an oil and gas lease. By a regular chain of conveyances, Phillip Freshwater acquired the rights so granted to Poe to a certain portion of that tract, designated as lot 8, and west ½ of lot 9 of block 1 of Poe's Third subdivision. Thereafter, and on October 24, 1919, Freshwater executed a conveyance of his rights to F. C. Hoyt and A. J. Bellport, Jr. The consideration for the conveyance last mentioned was the payment by the grantees of the sum of $10,000, and the execution by Hoyt and Bellport of two prom-

⬦➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

issory notes in favor of Freshwater for the principal sum of $10,000 each.

The first National Bank of Chester, W. Va., instituted this suit against Hoyt and Bellport to recover on those two notes, claiming to be the legal owner and holder thereof for a valuable consideration and without notice of any defense thereto. Hoyt and Bellport interpleaded Freshwater, alleging that the execution of the notes sued on was procured by fraudulent misrepresentations on the part of Freshwater which induced them to purchase the oil and gas permit, which fraud invalidated the notes, and that the bank was not an innocent purchaser of them, but took the same with full notice of the fraud. After that plea was filed, the bank dropped out of the suit, and Freshwater filed a petition asking for a recovery on the notes in his own name, claiming the ownership thereof, and the trial which followed was solely between him as plaintiff and Hoyt and Bellport as defendants.

In their pleadings Hoyt and Bellport not only resisted a recovery upon the notes by reason of the fraud alleged, but also by cross-action sought a recovery against Freshwater for the $10,000 cash paid by them to him for the conveyance executed in their favor. The fraud alleged consisted of representations by Freshwater that he was the owner of the lease and leasehold estate; that he was in possession thereof; that no one else was claiming title to or possession of the oil and gas lease in the land covered by the conveyance to them; that the only question of title was the controversy between the state of Texas and the state of Oklahoma as to whether or not the land covered by the lease was situated in the one state or the other; that said representations were false and fraudulently made by Freshwater; and that the same induced Hoyt and Bellport to purchase said lease from Freshwater and pay him the cash consideration mentioned and execute the promissory notes sued on. It was further alleged, in substance, in that connection, that as a matter of fact Freshwater owned no valid right to prospect for and acquire oil and gas on the land covered by the instrument of conveyance, executed by him to Hoyt and Bellport; that Freshwater was not in possession of said land at the time he executed the said conveyance and made said representations, but that said land was then held and then in actual possession of the Sinclair Oil & Refining Company, which was holding the same under a claim of title, and which refused possession of the same to Hoyt and Bellport, and which maintained an armed guard on the premises to prohibit Hoyt and Bellport from even coming thereupon.

In reply to such pleading, Freshwater denied all those allegations of fraudulent misrepresentations, and further alleged specially that, before the consummation of the trade between the parties, Hoyt and Bellport went upon and inspected the land in controversy in order to ascertain whether or not any one was in possession of the same, and also had the title to the lease in controversy examined by attorneys of their own selection; that they were also furnished an abstract of title and the opinions of other attorneys who had pronounced the title good; that, if the misrepresentations charged to have been made by Freshwater were in fact made, then Hoyt and Bellport are estopped to complain of the same, and have waived any right to make such complaint, by reason of the fact that they did not rely thereon and were not induced thereby to consummate said trade, but relied on the inspection actually made of the premises for the purpose of ascertaining whether or not any one was in possession of the land and claiming title thereto, and upon the opinions of said attorneys and abstract of title in order to determine whether or not he (Freshwater) had title.

The Sinclair Oil & Refining Company was not a party to the suit, but evidence was introduced pro and con upon the issue whether or not that company owned a valid oil and gas lease upon the land in controversy; Hoyt and Bellport contending that the lease held by that company, under which it was operating, covered the land in controversy, and Freshwater's contention being that it did not cover it. The lease held by that company covered parts of the Lucinda Meadows and Elizabeth Stanley surveys. No question was raised as to the validity of that lease to the lands legally covered thereby, but the pivotal question as to title was whether the land covered by the lease in controversy in this suit was a part of either of those surveys; the permit having been issued by the land commissioner upon the theory that it was unappropriated public domain and was not covered by either of those surveys.

The case was tried before a jury, who returned findings upon special issues submitted to them. The trial judge instructed the jury, in part, as follows:

"If you find and believe from the evidence that the land in controversy is without the boundaries of the Elizabeth Stanley survey, then you are instructed that the Sinclair Oil & Refining Company had no title or claim thereto."

Following that instruction, the court submitted the following special issues, to which the jury made answers as indicated:

"Special Issue No. 1. State whether or not lot 8 and the west one-half of lot 9, out of block 1, of H. C. Poe's Third subdivision, Wichita county, Tex., lays outside and north of the boundaries of the Elizabeth Stanley survey, Wichita county, Tex. Ans. Yes.

"Special Issue No. 2. Did the defendant Freshwater represent to defendants Hoyt and

Bellport, or either of them, on or prior to the date of October 24, 1919, that the Graves well was not located on either lots 8 or 9 in question? Ans. Yes.

"Special Issue No. 3. Did the defendant Freshwater represent to defendants Hoyt and Bellport, or either of them, on or prior to the date of October 24, 1919, that there was no adverse claim of title to the lots in question except what claim the state of Oklahoma might have thereto, or placer mining claims? Ans. Yes.

"Special Issue No. 4. Did the defendant Freshwater represent to the defendants Hoyt and Bellport, or either of them, on or prior to the date of October 24, 1919, that there was no one claiming possession to said lots adverse to him? Ans. Yes.

"Special Issue No. 5. Find whether or not the Graves well, which was in the vicinity of the lots in question, was in fact located on lot No. 8 or the west half of lot 9. Ans. Yes.

"Special Issue No. 6. Find whether or not the Sinclair Oil & Gas Company was claiming the title to the oil and gas rights on the lot in controversy in this case, except a part thereof lying on the northwest corner, below the actual low bank of the river, during all of the period and time covered by the negotiations and contract between the defendant Freshwater and defendants Hoyt and Bellport. Ans. Yes.

"Special Issue No. 7. Find whether or not the Sinclair Oil & Gas Company was in the actual possession of the lots in controversy except a part thereof lying on the northwest corner, below the actual bank of the river, during the period of negotiations between Freshwater and Bellport and Hoyt and subsequent thereto. Ans. Yes.

"Special Issue No. 8. Find whether or not the defendants Hoyt and Bellport were able to enter the premises in question and get possession thereof for the purpose of complying with the terms of the contract in question. Ans. No.

"Special Issue No. 9. If you answer No. 5, 'Yes,' then find whether or not the defendants Hoyt and Bellport would have entered into the contract in question and would have paid the money and executed the notes in question if they had known that at the time there was a well being drilled on a' part of said lots by a party claiming title thereto adverse to the defendant Freshwater. Ans. Yes.

"Special Issue No. 10. If you have answered No. 6, 'Yes,' then find whether or not the defendants Hoyt and Bellport would have entered into the contract in question and have paid the money and executed the notes in question had they known that the Sinclair Oil & Gas Company was claiming title to any part of the lots in controversy. Ans. No.

"Special Issue No. 11. If you have answered No. 7, 'Yes,' then find whether or not the defendants Hoyt and Bellport would have entered into the contract in question and paid the money and executed the notes in question had they then known that the Sinclair Oil Company at that time was in actual possession of the larger part of the lots in controversy. Ans. No.

"Special Issue No. 12. If you have answered questions Nos. 2, 3, and 4, or either of them, in the affirmative, then find whether or not the defendants Hoyt and Bellport relied upon said representations. Ans. Yes.

"Special Issue No. 13. If you have answered questions Nos. 2, 3, and 4, or either of them, in the affirmative, find whether or not such representations, or any of them, were material in inducing defendants Hoyt and Bellport to enter into the contract in question and pay the money and execute the notes in question. Ans. Yes.

"Special Issue No. 14. If you answered No. 5, 'Yes,' then find whether or not the defendants Hoyt and Bellport, or either of them, knew at the time the contract was entered into and the money paid and the notes executed that the Graves Oil Company was then drilling a well on any part of the land in controversy. Ans. No.

"Special Issue No. 15. If you answered No. 6, 'Yes,' then find whether or not the defendants Hoyt and Bellport, or either of them, knew, at the time the contract was entered into and the money paid and the notes executed, that the Sinclair Oil Company was claiming title or possession to the oil and gas rights on any part of the land in question. Ans. No.

"Special Issue No. 16. Prior to the time of the execution of the contract in question, did the defendants Hoyt and Bellport, or either of them, undertake to make an independent investigation of the title to the property in question? Ans. Yes.

"Special Issue No. 17. Did the defendants Hoyt and Bellport, or either of them, before the execution of the contract of October 24, 1919, secure their attorney P. B. Cox to give them an opinion on the title to the property in question? Ans. No.

"Special Issue No. 18. Did the defendant Freshwater represent and state to the defendants Hoyt and Bellport, or either of them, before the execution of the contract of October 24, 1919, that he was in possession of the lease and land in question? Ans. Yes.

"Special Issue No. 19. If special issue No. 18 is answered in the affirmative, then find whether said statement of Freshwater was a mere expression of opinion. Ans. Yes.

"Special Issue No. 20. If you answer special issue No. 19, 'Yes,' then was there any intention on the part of Freshwater to deceive or mislead the defendants Hoyt and Bellport by said expression of opinion? Ans. No.

"If you answer special issue No. 18, 'Yes,' you will answer the following special issues Nos. 21 and 22, but if you answer in the negative then you need not answer said issues.

"Special Issue No. 21. Were the defendants Hoyt and Bellport induced by said representations and did they rely thereon in executing said contract? Ans. Yes.

"Special Issue No. 22. Were said representations, as to possession, if you find they were made by Freshwater, material? Ans. Yes.

"Special Issue No. 23. Did the defendant Freshwater represent or state to Hoyt and Bellport, before the execution of the contract in question, that he had a good title to the oil and gas permit on the land in question, except as to the claim of Oklahoma? Ans. Yes.

"(B) If you answer the above in the affirmative, then find whether said statement of Fresh-

water was a mere expression of opinion. Ans. Yes.

"(C) If you answer B, 'Yes,' then was there any intention on the part of Freshwater to deceive or mislead the defendants Hoyt and Bellport by said expression of opinion? Ans. No.

"Special Issue No. 24. If you answer special issue No. 23, 'Yes,' then you will answer the following special issues A and B, but if you answer the same in the negative then you need not answer issues A and B following.

"(A) Were the defendants Hoyt and Bellport induced thereby to execute said contract and did they rely upon said representations? Ans. Yes.

"(B) Were said representations material? Ans. Yes.

"Special Issue No. 25. If you have answered interrogatory No. 21, 'Yes,' then did the defendants Hoyt and Bellport, or either of them, prior to the execution of the contract in question, agree to waive any defects or objections to the title of the permit in question? Ans. Yes.

"Special Issue No. 26. Did the defendants Hoyt and Bellport, or either of them, prior to the execution of the contract of October 24, 1919, agree to accept only such title as the defendant Freshwater had to the property in question? Ans. Yes. * * *

"Special Issue No. 28. Did the defendants Hoyt and Bellport, or either of them, make any independent investigation as to the status of the title and possession of the property prior to the execution of the contract in question? Ans. No, as to possession; yes, as to title.

"Special Issue No. 29. Did Hoyt and Bellport, or either of them, have full knowledge of the status of the title and possession of the property in question at the time they made the payment of $7,500? Ans. No.

"In this case the burden of proof is upon the defendants Hoyt and Bellport to establish the material allegations of their pleadings by a preponderance of testimony."

Predicated upon the findings of the jury, Hoyt and Bellport presented to the court a motion praying the rendition of a judgment in their favor, canceling the two notes sued on, and for the recovery of the $10,000 cash paid by them to Freshwater at the time the trade in controversy was consummated. That motion was denied, and, instead of a judgment in favor of Hoyt and Bellport, the court rendered a judgment in favor of Freshwater against them for the amount due upon the two notes sued on, and denied Hoyt and Bellport any recovery for the $10,000 cash paid, as prayed for in the counterclaim or cross-action. From that judgment, Hoyt and Bellport have appealed.

Contemporaneously with the assignment by Freshwater to Hoyt and Bellport of the oil and gas lease to the land in controversy, the parties to that instrument executed a written contract of assignment embodying the terms of the trade so made, and which written contract contained the following stipulation; Freshwater being referred to as

party of the first part and Hoyt and Bellport as parties of the second part:

"It is understood and agreed by the parties herein that the said permit is held by the party of the first part through proper assignment from the state of Texas under and by virtue of application made by the grantors of the party of the first part in accordance with the laws of the state of Texas governing the oil leases and public lands and the parties of the second part agree to accept said permit subject to the obligations provided by law for that kind and character of permit, and said parties of the second part hereby waive all claims or defects in the title to said property, and no abstract is to be furnished."

We are of the opinion that the court erred in denying appellants' motion for judgment in their favor upon the verdict returned, as insisted by them in different assignments of error.

The Sinclair Oil & Refining Company's lease was on part of the Lucinda Meadows and Elizabeth Stanley surveys. It will be noted that no issue was submitted to the jury by the trial judge as to whether or not the land in controversy was part of the Lucinda Meadows survey, but the court peremptorily instructed the jury that, if the land in controversy was not a part of the Elizabeth Stanley survey, then the Sinclair Oil & Refining Company had no title thereto. The correctness of that ruling cannot be questioned upon appellants' motion to render judgment in their favor upon the verdict returned.

[1] According to the findings of the jury, appellants were induced to take over the lease, pay the $10,000 cash consideration, and execute the notes sued on by different false representations made to them by Freshwater, all of which were material. One of those misrepresentations was that Freshwater was in possession of the land in controversy; another was that there was no adverse claim of title to that property except the claim the state of Oklahoma might have, or placer mining claims; and another was that there was no one asserting any claim of possession of the property. Those misrepresentations were sufficient of themselves to serve as a proper basis for the relief prayed for by Hoyt and Bellport, notwithstanding the further finding to the effect that the Sinclair Oil & Refining Company had no title to the property. According to further findings of the jury, those misrepresentations were relied on by appellants, and they would not have consummated the trade if the same had not been made.

In Durham v. Wichita M. & E. Co. (Tex. Civ. App.) 202 S. W. 138, the following is quoted with approval from 12 R. C. L. § 112:

"It is not necessary that the misrepresentations should be the sole cause or inducement of the contract or transaction in question, contributing to the result, but it is enough that

it may have constituted a material inducement. Relief may be had under this rule where reliance was in part on one's own investigation."

In Sims v. Ford (Tex. Civ. App.) 209 S. W. 699, the following was said:

"In action by vendee against vendor for damages for false representations, proof of falsity of one material representation among a number alleged is sufficient if purchase would not have been made without it."

And to the same effect are the following authorities, to which many might be added: Massirer v. Milam (Tex. Civ. App.) 223 S. W. 302; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

[2] It is earnestly insisted by counsel for appellee that appellants are in no position to complain of any of the misrepresentations found by the jury, in view of the further finding that they did make an independent investigation as to the title; it being further insisted in that connection that since, as found by the jury, the Sinclair Oil & Refining Company had no title to the lease and the title was therefore acquired by appellants, the mere fact that the Sinclair Oil & Refining Company was claiming title and was in possession could not work any material damage to appellants. This was not a suit for damages, and the question to be determined is whether or not the misrepresentations other than that of title were material misrepresentations which induced appellants to enter into the contract. This issue was found by the jury in favor of the appellants, and we think the finding is amply supported by the proof. Furthermore, we hardly perceive how it could be said that the failure of appellants to get possession of the lease so as to begin operations on the property for oil and gas did not work an injury to them. Appellee, for a valuable consideration paid to him, had contracted that appellants might have immediate possession, and he could not escape the legal consequences of his misrepresentations, even though it could be said that appellants acquired title, and could by litigation, which perhaps might require a long period of time and much expense, recover possession of the Sinclair Oil & Refining Company.

[3] It is insisted further by appellee that, since the misrepresentations with respect to possession of the lease were found by the jury to be merely expressions of opinion, they could not furnish any proper basis for the relief prayed for by appellants, since, as found by the jury, such misrepresentations were made by appellee in good faith and with no intention to defraud appellants. In support of that contention, appellee cites such authorities as Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816; Houston v. Darnall Lumber

Co. (Tex. Civ. App.) 146 S. W. 1061; Little v. Allen, 56 Tex. 133; 35 L. R. A. 417, note. Those authorities have no application to the question now under discussion, because the finding by the jury that the misrepresentations with respect to the possession of the property by Freshwater were mere expressions of opinion, made in good faith and with no intention to defraud, must be considered immaterial for the reason that whether or not the same were intended by Freshwater to be merely expressions of opinion, and not statements of fact, was not made an issue upon the trial, either by pleading or proof. Both in his pleadings and in his testimony Freshwater flatly denied making those representations. Prima facie, at least, the representations that Freshwater was in possession of the property, and that no one else was asserting any claim to such possession, were statements of fact, and, if those statements were made in any qualifying sense different from what the language plainly imports, it was incumbent upon appellee to plead and prove the same, and also that they were so understood by appellants at the time. In the absence of such pleading and proof, no proper predicate was established for the submission to the jury of the issue whether or not those statements were expressions of opinion only, with no intent to defraud; and the findings of the jury in answer to those issues must be disregarded as immaterial.

In Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 918, the following was quoted with approval from Pomeroy's Equity Jurisprudence:

"Wherever a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it is such, then the statement clearly becomes an affirmation of fact, within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value."

To the same effect are many other authorities that might be cited, such as Connally v. Saunders (Tex. Civ. App.) 142 S. W. 975; White v. Peters (Tex. Civ. App.) 185 S. W. 659; Zundelowitz v. Waggoner (Tex. Civ. App.) 211 S. W. 598; Philpott v. Edge (Tex. Civ. App.) 224 S. W. 263; McDonald v. Lastinger (Tex. Civ. App.) 214 S. W. 829.

In Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, Burnett was awarded the cancellation of a deed of conveyance to him by Buchanan on the ground that Buchanan induced him to purchase the property upon the false and fraudulent representations that Buchanan had good title to the property and which representations were relied upon by Burnett

That judgment was affirmed by our Supreme Court, and in the opinion rendered the following was said:

"It is urged by the plaintiff in error that the evidence in this case shows only that the plaintiff in error expressed his opinion of the reliability of his title, therefore it constituted no cause for rescission of the sale. Although the statement made by Buchanan to Burnett embodied a conclusion drawn from the facts relative to the title, it was in effect a representation that the facts which would constitute a good title to the land existed. It was not an opinion as to the legal effect of known facts and muniments of title, for which the seller would not be responsible. The ignorance of Burnett on the subject of land titles adds force to the conclusion that the representations made by Buchanan had the effect of a statement that all the facts existed which would constitute a good title to the land. * * *

"The fact that Buchanan believed that he had a good title to the land when he sold it and when he made the deed to Burnett was unimportant if in fact Burnett believed the representations to be true and relied upon them, making the purchase upon the faith of the statements made by Buchanan. Mitchell v. Zimmerman, 4 Tex. 81."

[4] And it is well settled that a material misrepresentation of fact which is relied upon by another and induces him to enter into a contract furnishes a sufficient basis for a rescission of the contract at the instance of the person deceived, even though the misrepresentation is made in good faith and with no intention to deceive the other person; and that it does not lie in the mouth of the person making such representation to say that the person deceived was guilty of negligence, precluding a recovery, by relying upon the truth of such misrepresentations without making an independent investigation as to the truth or falsity thereof. · Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Magill v. Coffman (Tex. Civ. App.) 129 S. W. 1146; U. S. Gypsum v. Shields (Tex. Civ. App.) 106 S. W. 724; Paschal v. Hudson (Tex. Civ. App.) 169 S. W. 911; Ford v. Sims (Tex. Civ. App.) 190 S. W. 1165; Barber v. Keeling (Tex. Civ. App.) 204 S. W. 139; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Labbe v. Corbett, 69 Tex. 509, 6 S. W. 808.

Appellee contends further that the evidence conclusively shows that appellants undertook to make an independent investigation of all facts which the jury found were misrepresented to them, and that therefore they are estopped to claim that they were misled by such representations. And, predicated upon that contention, appellee has presented a cross-assignment to the action of the court in refusing his request for a peremptory instruction to the jury to find in his favor after the conclusion of the testimony. In support of that contention, appel-

lee has cited Pomeroy's Equity Jurisprudence, vol. 2, par. 895, p. 1856; Atwood v. Small, 6 Clark & F. 232; Cresap v. Manor, 63 Tex. 485; Newman v. Lyman (Tex. Civ. App.) 165 S. W. 136; Patterson v. Bushong (Tex. Civ. App.) 196 S. W. 962; Foster v. Bennett (Tex. Civ. App.) 178 S. W. 1001.

In the case of Newman v. Lyman, supra, the following was said:

"If a party undertakes to discover the truth, then he is bound by everything which a proper investigation would disclose, and the fact that fraudulent representations have been made would not justify him in acting upon them. Garrett v. Burleson, 25 Tex. Sup. 44; Cresap v. Manor, 63 Tex. 485; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816."

However, that was a suit in which Newman sought to recover damages for fraudulent misrepresentations made to him by Lyman which induced Newman to part with valuable vendor's lien notes in exchange for capital stock in a brokerage company which was worthless. But in the opinion rendered by the Court of Appeals in that case, this was also said in reference to the findings of the trial court:

"The court found as a fact that prior to the purchase of the stock by Newman he had access to the books of the brokerage company, and frequently examined them, and made inquiry as to the business of the company, and was in a position to know and did know the condition of the affairs of the brokerage company at the time of the purchase of the stock. This finding is not excepted to, and is conclusive, and there is sufficient evidence in the record to support it."

If Newman actually knew the condition of the brokerage company as found by the court, then he could not say that he was misled by the false representations made to him by Lyman, and hence it was unnecessary, in the disposition of that case, to go as far as the language quoted seems to indicate. While that opinion is cited in Patterson v. Bushong, supra, by this court, yet a perusal of the opinion rendered· in the latter case by Associate Justice Buck will disclose that Bushong, who complained that he was induced to make an exchange of properties with Patterson by the false representations of the latter's agent that the land was worth $40 per acre, was not justified in relying upon such statement as one of fact, under all the circumstances in evidence, including the fact that Bushong before consummating the trade made a thorough investigation of the quality and market value of the land.

In the case of Cresap v. Manor, 63 Tex. 485, cited by appellee, certain fraudulent statements on the part of Cresap were alleged by Manor to have induced him to make the trade sought to be rescinded. Referring to the alleged fraudulent statements

on the part of Cresap, our Supreme Court said:

"If the supposed fraudulent statement as to the note had been acted upon by Manor, there might be some necessity for us to pass upon the point raised. But it seems from uncontradicted evidence, that, if such a representation was made by Cresap, it was not relied on by" Manor.

In the case of Foster v. Bennett, 178 S. W. 1001, cited above, by the Court of Civil Appeals of Amarillo, there are quotations from Pomeroy's Equity Jurisprudence substantially to the effect as the announcement by the same court in Newman v. Lyman, quoted above, and in the case of Slaughter v. Gerson, 13 Wall. 383, 20 L. Ed. 628. The quotations from Pomeroy are as follows:

" 'If, after a representation of fact, no matter how positive, the party receiving it institutes an inquiry for himself, as recourse to the proper means of obtaining information, and actually learns the real facts, the claim that he relied upon the first statement and was misled by it cannot be admitted, * * * and, if allowed, his defense would furnish a ready means of avoiding all contracts with which a party had become dissatisfied.' * * *
" 'The same result must plainly follow when, after the representation, the party receiving it has had given to him a sufficient opportunity of examining into the real facts, he is directed to the source of information, and he commences or purports or professes to commence the investigation. The plainest motives and grounds of convenience and expediency demand that, in such circumstances, he must be charged with all the knowledge which he might have obtained had he pursued the inquiry with care and thoroughness to the end. He cannot be heard to allege that he did not learn the truth; he cannot claim to have been misled.' "

[5] Those general announcements imply the statement that if a person to whom fraudulent representations are made in order to induce him to enter into a contract undertakes an independent inquiry as to the truth or falsity of the representations, he owes the legal duty to pursue the inquiry with reasonable diligence and is chargeable with knowledge of all facts which he could discover by the exercise of such diligence; and that a failure to exercise such diligence will preclude a recovery for such false representations. Whatever the rule may be in other jurisdictions, we think it well settled in this state that one guilty of such fraud cannot defeat a recovery based thereon by the defense that the one whom he has thus defrauded has been guilty of negligence in failing to discover the fraud. Some of the decisions already cited clearly hold such to be the rule, and we think they are supported by the soundest elementary principles of equitable estoppel.

In Buchanan v. Burnett, 102 Tex. 495, 119

S. W. 1142, 132 Am. St. Rep. 900, the following was said:

"It is also urged that Burnett had in his possession an abstract of title which showed the defect in Buchanan's title and that it was his duty to inform himself of the title as he had the means of so doing. Burnett was under no duty to his vendor to investigate the truth or falsity of statements and representations made to him in connection with the title. Labbe v. Corbett, 69 Tex. 509. In the case cited the court lays down the rule in the following quotation from another authority: 'When once it is established that there has been any fraudulent misrepresentations * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue * * * for the purpose of drawing me into a contract, cannot accuse me of want of caution, because I relied implicitly upon your fairness and honesty." ' "

The case of Moore v. Beakley, 215 S. W. 957, decided by our Supreme Court, was a suit for damages for false representations made in the exchange of properties. In that case the following was said:

"The Court of Civil Appeals sustained the action of the trial court in withdrawing the case from the jury, upon two grounds: (1) That the plaintiffs had ample time and opportunity to investigate and learn the truth concerning the bonds before the trade was consummated; (2) that the evidence failed to show that plaintiff suffered any actual damages by reason of the false representations.
"It is well settled in this state that where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based thereon by a plea that the party defrauded might have discovered the truth by the exercise of proper care."

Following that announcement is a citation with approval of Labbe v. Corbett, 69 Tex. 509, 6 S. W. 811, with the same language quoted therefrom as was quoted in Buchanan v. Burnett, set out above. And, continuing, the court said:

"It is clear, we think, under the authorities, that it was not the duty of plaintiffs to make any investigation as to the truth or falsity of the statements and representations made to them concerning the bonds. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Griffith v. Hanks & Collins, 46 Tex. 217; Hall v. Bank, 36 Tex. Civ. App. 317, 81 S. W. 762."

Especially does that rule obtain in this state when the one guilty of such misrepresentations is in a better position to know the truth than is the one who relies upon them. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717. In the absence of some duty to make an inspection to discover whether

or not appellee had told the truth with respect to the possession of the land, there was no proper basis for the defense of estoppel by reason of appellants' undertaking to inspect, which inspection, however, failed to discover the truth. And the finding that appellants were induced to make the trade by reliance upon the truthfulness of such representations, and did not intend to rely, and did not rely, upon the facts learned from such inspection, refutes the further defense of waiver of their right to complain of the fraud practiced. The situation of appellee in the transaction was quite different. He owed the legal duty to tell the truth in making statements intended to influence, and which did cause appellants to enter into the contract, and is estopped to complain that they were guilty of negligence in failing to discover the falsity of such statements. If a person undertakes an independent investigation to discover the truth, that fact is a circumstance to be looked to by the jury in determining whether or not he relied upon the representations made to him and was induced thereby to enter into the contract. But the jury is the exclusive judge of that fact, as of all others, and the investigation so made does not preclude a finding that the representations were the inducing and procuring cause that led the complaining party to enter into the contract. The pivotal and controlling question is whether or not the fraud practiced induced the complaining party to enter into the contract which he seeks to rescind.

[6] Furthermore, the fact that the contract itself contained a stipulation, in effect, that appellants would waive any defects or objection to the title to the property which appellee agreed to convey to them, does not preclude a recovery by them if the entire contract was procured by means of fraudulent representations. Massirer v. Milam, (Tex. Civ. App.) 223 S. W. 302; Bridger v. Goldsmith, 143 N. Y. 424, 38 N. E. 458; Jordan v. Nelson (Iowa) 178 N. W. 544, 10 A. L. R. 1464.

[7] Another contention made by appellee is that any right to complain of misrepresentations which appellants had originally was lost by their failure to tender to appellee the lease obtained, for one year and eight months after the fraud was practiced. In support of that contention the following is cited from Black on Rescission and Cancellation:

"It is a general principle that a person who knows that he is entitled to rescind a contract cannot wait until suit is brought for payment or other enforcement of the contract, and then set up in his grounds of rescission, or at least such a course is regarded with great disfavor by the courts, if there has been any considerable lapse of time since the discovery of the fact."

Appellee also cites Minchew, v. Morris (Tex. Civ. App.) 241 S. W. 215; Higson v. Hughes, 72 Wash. 362, 130 Pac. 478.

[8] The contract was entered into upon October 24, 1919, and this suit was instituted on December 4, 1919. The second amended original answer of appellants, setting up the fraud complained of in the suit, was filed June 25, 1921. The record does not disclose when the original answer and first amended original answer were filed. In their pleadings shown in this record appellants did not specifically tender a return of the lease to Freshwater until June 27, 1921, when such tender was made in their supplemental petition. But that fact did not necessarily preclude a recovery by them, since the fraud had been theretofore specifically pleaded and the relief sought was predicated thereon, and in their pleadings appellants had prayed for "general and special relief in law and equity as he may show himself justly entitled to receive." Furthermore, appellee did not present any exception in the trial court to the sufficiency of the pleadings by reason of an absence therefrom of such tender, nor any plea of waiver by appellants of the right to complain of such fraud by reason of a failure to sooner tender a return of said lease to him. Accordingly, we overrule the contention made by appellee that this record conclusively shows that appellants waited an unreasonable length of time after the discovery of the fraud practiced before they elected to rescind the contract.

Appellants insist that the finding in answer to issue No. 9, to the effect that appellants would have entered into the contract with Freshwater and paid the consideration therefor, even if they had known that the Graves well had been drilled on a part of the land in controversy by some person claiming title, was apparently a clerical error and contrary to what the jury really concluded, when that finding is read in the light of the entire verdict; while appellee contends that the finding of issue No. 9, of itself, precludes the asserted right of appellants to a judgment on the verdict. Whether or not that finding was a mere clerical error in drafting the verdict, it is not necessary for us to determine, since it is not necessarily in conflict with other material findings that the Sinclair Oil & Refining Company was in possession of the larger portion of the lease, to say the least, under a claim of title, that by reason thereof appellants were unable to get possession, and had they known of such adverse possession and adverse claim of title by the Sinclair Oil & Refining Company they would not have entered into the contract with Freshwater.

For the reasons stated, appellants' first assignment of error must be sustained, the judgment of the trial court in favor of ap-

pellee Freshwater is reversed, and judgment is here rendered denying him a recovery and in favor of the appellants against said appellee for the cancellation of the notes sued on and for the recovery of $10,000, the amount which appellants paid to the appellee for the lease in controversy, and for interest thereon at the rate of 6 per cent. per annum from the 24th day of October, 1919, up to the present date, together with all costs of the suit in the, trial court and in this court, and· this conclusion renders it unnecessary to discuss several other assignments presented in appellants' brief.

The judgment of the district court denying to the First National Bank of Chester, W. Va., recovery, of which no complaint is made, is left undisturbed.