## GEORGE C. HATHORNE v. JOHN T. HODGES.

In an action to recover the possession of property, on the ground that it was obtained from the plaintiff, by the defendant's vendor, by a purchase thereof on credit, upon false and fraudulent representations, and with the design to dispose of it for cash and then abscond, leaving the purchase price unpaid, evidence tending to show other purchases of property made by the defendant's vendor from other parties, under similar circumstances, and that he left the price unpaid when he ran away, is competent.

Where property is obtained from the owner by means of a fraudulent purchase thereof on credit, the purchaser giving his notes for the purchase money, payable at a future day; and before the maturity of the notes the purchaser absconds, after having transferrred the property to a third person, the original vendor is not bound to proceed in disaffirmance of the contract, by seizing or replevying the goods immediately after the purchaser has absconded; but is justified in waiting until the maturity of the notes; and such delay will not be deemed a ratification of the sale.

Where a purchaser has absconded, leaving the purchase money unpaid, the vendor is not bound to offer to return to him the notes given for the purchase money, before bringing an action to disaffirm the sale. It is sufficient if he produce the notes on the trial.

APPEAL from the Supreme Court. The action was brought to recover the possession of two bay horses claimed to belong to the plaintiff, and to have been wrongfully detained by the defendant. The plaintiff had sold them to one Higgins and taken his notes therefor. Higgins transferred the horses to the defendant, from whom the plaintiff demanded them before suit brought. This action was in disaffirmance of the contract of sale and founded on the idea of a fraudulent purchase by Higgins with intent not to pay for them—of a connivance between Higgins and the defendant to defraud the plaintiff of the price, or prevent his obtaining the same—of a purchase by the defendant from Higgins with knowledge that the purchase price from Higgins to the plaintiff was not paid, and also with reason to suspect a fraudulent attempt by Higgins to deprive the plaintiff of compensation for the price. There was evidence—at least some evidence—on all these points; and the case was submitted to the jury, who rendered a verdict for the plaintiff.

*I. T. Williams*, for the appellant.

*A. Mathews*, for the respondent.

DENIO, Ch. J. This must be considered as an action against Hodges alone; for, although Higgins is mentioned as a defendant, in the complaint, he did not plead, and it does not appear that he was served with the summons. The plaintiff's case was that Higgins, in form, purchased the horses of him, on the 11th of June, 1855, but that on account of fraud on Higgins' part, the sale was void, and that the title did not pass, and that the horses were subsequently found in the defendant's possession; but that he did not acquire the possession under such circumstances as would enable him to claim a better title than Higgins had. The jury, by their general verdict against the defendant, must be understood as having pronounced in favor

of the plaintiff. The only questions which can now be made, arise upon the exceptions taken to rulings respecting the admissibility of evidence, and to exceptions to the charge of the judge.

The sale by Higgins to the defendant was on the 17th of July, 1855. It would appear, though the statement to that effect is not explicit, that the plaintiff proposed to give in evidence statements of Higgins, made after his sale to the defendant, in regard to the sale; for the case states that the defendant objected to such declarations and that the court overruled such objections, and the defendant's counsel excepted. The witness then under examination, Johnson, testified that Higgins said that Hodges was "one of the *damnedest little rascals* he ever saw." This was not testimony relating to the sale of the horses from Higgins to the defendant, but it related solely, so far as it appears, to the personal demerits of the defendant. It does not appear to have been responsive to any question put to the witness who gave the testimony, and it was not within the scope of the ruling which was excepted to. That ruling was apparently incorrect; for I can not conceive that the declarations of Higgins respecting the sale to the defendant, made after that sale had taken place, could have been competent against the defendant; but not having been admitted by the ruling or received in consequence of it, it was not an error of the judge for which the verdict ought to be interfered with. The defendant, if he had thought proper, might have called upon the judge to withdraw the answer from the consideration of the jury, and if he had refused, an exception to the ruling might have been sustained. The method taken by the plaintiff to establish the fraud of Higgins in purchasing the horses, will appear by the following statement: On the 1st of May, 1855, Higgins purchased of the plaintiff a lease of certain premises used as a coal yard, a quantity of fossil coal, and utensils which the plaintiff had used in the business of a vendor of coal. The object of Higgins was de-

clared by him to be to conduct, at that place, the business of purchasing and selling coal upon an extensive scale. The horses in question were purchased on credit by Higgins, of the plaintiff, on the 11th of June following, to be used in the same business, and Higgins absconded on the 8th of August following, having in the intermediate time (on the 17th of July) sold the coal yard, the coal purchased of the plaintiff, and these horses, and a large quantity of coal and other property, purchased by him on credit of other persons, the sale in the aggregate amounting to some $15,000. The plaintiff's theory was, that the design of Higgins throughout was, not the *bona fide* establishment of a regular business as a coal dealer, but on the pretense of such a business enterprise, to get into his hands a large amount of coal and other property under color of purchases on credit, and then to dispose of it for cash and abscond. The facts proved without objection tended to establish this theory, and the evidence which was admitted against the defendant's objection, was the subject of two other of the exceptions. That evidence tended to show other purchases of property by Higgins, of other parties under similar circumstances, and that he left the price unpaid when he ran away. I think the evidence was entirely competent.

The remaining exceptions were those taken to portions of the charge. The plaintiff took two notes for the purchase price of the horses, payable at a bank, and which would mature on the 14th and 17th of September, 1855. Higgins absconded as has been mentioned, on the 8th day of the preceding August. Instead of seizing or replevying the horses immediately after Higgins went away, and after the fraud was thus in part disclosed, the plaintiff placed the notes in the hands of a bank to await their maturity, but they were not paid. This is called, in the case, protesting them, but there was no indorser to be charged, the notes being to the order of the plaintiff. The judge charged that this retaining of the notes by the plaintiff and causing them to be

protested for payment, and what was further done, which is called protesting them and giving notice of non-payment, but which could not have been any thing more than giving notice to the plaintiff that the notes had not been taken up, was not in itself sufficient evidence of an affirmance of the sale to Higgins. It should be observed that the plaintiff had been given to understand by the defendant that there was a probability of his being paid out of the proceeds of the sale made by Higgins to the defendant. He was not a party to the agreement which had been made between Higgins and the defendant, and might well enough have supposed that the large amount of property which was thus disposed of might, in some way, have been used for the payment of his debts incurred in its purchase, including the debt of the plaintiff represented by the notes. I am of opinion that the evidence of fraud in the purchase of the horses by Higgins had not culminated, until it was shown by the dishonor of the notes, that there was no intention of applying the property which went into the defendants hands, or its proceeds, to the payment of the debt which arose out of its purchase. If this be so, the charge of the judge, that the treatment by the plaintiff of the notes did not show a ratification of the sale, was correct. The contract to return the notes to Higgins appears to have been impracticable, for he had absconded, so that they could not be given to him. It was sufficient therefore to produce them on the trial.

I am in favor of affirming the judgment appealed from.

HOGEBOOM, J. As the charge of the court is not given, except detached portions thereof, we must conclude that the questions of fact were submitted to the jury under proper instructions as to the law, (otherwise than as excepted to.) No questions remain for our determination except these exceptions to the admission of evidence, and three additional ones to the charge of the court.

In reference to the exceptions to evidence, they were founded on objections made to testimony of the declarations of Higgins, and of his acts in nearly contemporaneous purchases of goods from others beside the plaintiff, tending to show fraud. As Higgins appears to have been a party to the suit, so far as we can judge from the case, at the time of the commencement of the action and of the trial, though his name has got out of it in some way now, it is difficult to see why his own declarations were not admissible testimony against himself and therefore admissible in the cause. · The only one which can be claimed to have borne directly against the defendant was that made to the witness Johnson, who was asked to state what Higgins said to him in regard to the sale of the horses to Hodges. I incline to think sufficient evidence of a fraudulent combination between the defendants had been given to justify the admission of this evidence as against Hodges on that ground; but whether so or not, the answer of the witness was not responsive to the question, and should have been objected to and moved to be stricken out on that ground, which was not done. The answer was, "Higgins said that Hodges was one of the damnedest little rascals he ever saw." Now although this was not one of the most desirable certificates to the integrity of the defendant, yet as it stated no fact in support of this opinion—and was moreover the opinion of a party whose own honesty was impugned—we can scarcely suppose that it tended materially to prejudice the defendant, or entitled the party to a new trial on that ground.

The other objections to the testimony are to evidence of acts or alleged acts of fraudulent purchase by Higgins of other persons, nearly contemporaneous with that from the plaintiff, and these are held to be admissible for the purpose of showing a fraudulent intent in this particular instance.

The exceptions to the charge are three in number: 1st. To that portion of the charge which instructed the jury that the retention of the notes by Higgins till their maturity, pre-

sentation for payment, protest and notice of dishonor, was not of itself sufficient evidence of an affirmance of the sale by the plaintiff, but that he was still at liberty to disaffirm the sale and bring this action. This was the view of the judge on the question of fact, and if the defendant was dissatisfied with it I think he should have asked the submission of the question of fact to the jury. The only question of law arising on this part of the charge, upon a fair construction of it, was, I think, that the retaining of the notes so long and taking proceedings to protest them was not, *necessarily,* an affirmance of the contract of sale; which it plainly was not. If the soundness of the charge depended upon the question whether the judge was correct in his conclusion of fact, I should be disposed to sustain it upon the ground that at the time these acts were done the conduct of Higgins, although suspicious, was still not conclusively fraudulent, and that it was prudent to await this developement of events before the plaintiff took ulterior proceedings to disaffirm the sale. Further, Higgins had absconded and it was impossible at that time to make surrender of this paper, there being no one to surrender it to. I do not think a new trial should be granted on this ground.

The other exceptions are nearly similar in effect, and may be disposed of upon similar considerations. The judge charged that it was not necessary that the plaintiff should have surrendered the notes to be canceled in order to maintain the action. As Higgins was absent and there was nobody to receive the surrender, and as the courts have frequently held that they may even be surrendered on the trial, when a reasonable excuse is given for not making an earlier surrender, the judge appears to have charged correctly enough in this particular. A contrary charge would have been fatal to the plaintiff, and would have left nothing for the jury to pass upon.

Again, the judge charged the jury (and this is the subject of the remaining exception) that the possession of the notes

on the trial by the plaintiff was not sufficient evidence of an affirmance of the sale of the horses, or inconsistent with his right to recover in this action.   This question has been considered in disposing of the two previous exceptions.   It would have been better perhaps if the judge had stated, as was his apparent meaning, that the possession of the notes was not *conclusive* evidence of an affirmance of the sale of the horses, or necessarily inconsistent with his right to maintain this action.   This was the principle of law involved, and so far the judge was right.   If there be any thing else in the exception I think it was matter of fact, as to which the defendant did not ask to go to the jury and therefore is remediless. The judgment should be *affirmed.*

INGRAHAM and MULLIN, JJ. voted for a reversal.   DAVIES, J. took no part in the decision.   All the other judges being for affirmance,

Judgment affirmed.