THOMAS GRIFFETH ET AL V. HANKS & COLLINS.

1. FRAUDULENT REPRESENTATIONS—NOTICE.—Where a vendor represented that the subject of sale was free from incumbrance, save a small and inconsiderable balance of an amount, secured by a deed of trust on the property sold, which representation was false as to the amount, in an action for the purchase-money, that fact being shown, its effect is not impaired by showing that the vendee, having notice of the incumbrance, could have ascertained its amount by inquiry.

2. NOTE PAYABLE IN PROPERTY.—The obligation given for the purchase-money under such circumstances, and transferred to the holder of the prior lien, is, in an action by him, subject to the same defense as if owned by the original obligee.

APPEAL from Cherokee. Tried below before the Hon. R. S. Walker.

Griffeth & Wedge sued Hanks & Collins on nine obligations, for the delivery of lumber, executed to one J. C. Seydel, for the purchase-money of a steam mill and fixtures, which were indorsed by Seydel to plaintiffs.

Defendants answered that the purchase by them was induced by the false representations to them, made by Seydel, that the mill was free from incumbrances, except in a small sum—about $600—which he would pay, when, in fact, the mill, &c., had been conveyed by Seydel, by deed of trust, to plaintiffs, before the sale to defendants, to secure the payment of a debt, and which deed of trust, having been enforced, by sale of said mill, the consideration failed, &c.

The court charged the jury (after stating the case) as follows: "Every false statement made, as to the facts, in making a contract, does not necessarily vitiate or avoid it; but where the matter of representation relates to a material subject of the contract, and forms an inducement to the making of the contract, it may have the effect wholly to annul and avoid the contract, unless, after the discovery of the fraud, the party who might complain, acquiesces in and adopts the contract, and proceeds to act upon it and recognizes its validity.

"Applying these principles to this case, if you are satisfied,

from the evidence, that Seydel made the representations and statements, alleged in the amended answer, to the defendants, and if you also believe that the existence or non-existence of a lien or incumbrance upon the property formed a material inducement or consideration to the defendants in entering into the contract for the purchase of the engine, &c., and that the defendants relied upon the fact that there was either no incumbrance, or only a small balance due upon the deed of trust, which could be readily provided against, by satisfying it, such a state of facts would constitute such a fraud as would avoid the contract, provided those representations in fact misled defendants into making a contract, which they would not otherwise have made, and provided further, that the representations were in fact untrue and false.

" If, however, you believe, that before the final consummation of the contract, the defendants were informed that there existed an incumbrance upon the property, upon which a small balance was due, there could exist no fraud in the transaction, unless the amount in fact due, was in truth an amount exceeding considerably that which Seydel meant to imply. The term 'small balance,' is indefinite and relative, and you will necessarily, in construing the evidence, endeavor to judge, as best you can, as to the impression sought to be made on defendants, as to the amount due; and if you believe that Seydel meant to create the impression, and did do so, that the balance due was less than he believed the defendants would have been willing to take a risk against in buying, and if the balance due turned out to be in fact not the small balance which the defendants had reason to suppose it to have been, you will, in such case, find for the defendants."

The jury found for defendants. Plaintiffs' motion for new trial was overruled, and they appealed.

*Wilson & Bonner,* for appellants, cited Chandler *v.* Von Reader, 24 How., 444; Austin *v.* Talk, 20 Tex., 164; Andrews *v.* Smithwick, 20 Tex., 111; Steagall *v.* McKellar, 20 Tex.,

265; 2 Kent, 484, 485; .2 Story's Eq. Jur., sec. 200; 2 Pars. on Cont., 270; Kerr on Fraud and Mistake, 77, 236, 239, 240, 252, and note 82; Rice *v.* McDonald, 6 Md., 403; Schermerhorn *v.* Gouge, 13 Abb. Pr. R., 315; White *v.* Seaver, 25 Barb., 235; Burton *v.* Wellers, 6 Litt., Select Cases, 32; Turner *v.* Lambeth, 2 Tex., 365.

No brief for appellees came to hands of the reporters.

MOORE, ASSOCIATE JUSTICE.—There is no error in the charge of the court of which appellant can justly complain. The material question in the case, on the issue of fraud, was not whether appellees had notice of the lien which appellant held upon the mill when appellees purchased it from Seydel, but whether or not the representations made to them by Seydel, in regard to this lien, were false, and fraudulently made for the purpose of inducing them to purchase the mill, and whether they were in fact deceived and misled by these representations. It is no answer to the charge made by appellees, that they were induced to purchase the mill by the false and fraudulent representations of Seydel, that there was but a small and inconsiderable balance of the amounts secured by the lien unpaid, and that he would pay this amount, and relieve the property from the incumbrance upon it—to say that appellees were informed that appellants held a lien upon the mill; and if they were not informed of the amount of the lien, they could have ascertained it by inquiry of appellants or their agents, at Dallas, or by an examination of the records there; that the notice given appellees was sufficient to put them upon inquiry; and if they failed to make inquiry, they should suffer the consequence. This is undoubtedly true in cases to which this rule is applicable, but it certainly does not apply to such cases as this. Appellants are not seeking to maintain their title to the mill as purchasers without notice of appellees' lien; but having surrendered the mill, they are now resisting the effort of appellants to collect from them, for

themselves and Seydel, the amount which they had agreed to pay Seydel for it.

It plainly appears, from the evidence in the case, that the consideration for the obligations upon which the suit is brought, unless to a small extent, for the use of the mill while in appellees' possession, had wholly failed. The obligations being for the delivery of lumber, appellees were entitled to make any defense against them in appellants' hands that they could if they had been sued by Seydel; and it is certainly needless to say that he could not have forced them to pay for the mill, after it had been taken from them by reason of a lien given upon it by him prior to its sale to them, whether they had notice of the lien when they purchased or not. The most either Seydel or his assignees could claim of appellees would be the value of the use of the mill while in their possession. This, however, was not demanded of them in this action, and, possibly, did not exceed the amount paid by appellees before they were dispossessed of the mill.

The judgment is affirmed.

AFFIRMED.