SLAYDEN-KIRKSEY WOOLEN MILLS V. A. F. WEBER ET AL.

Decided May 15, 1907.

**Fraud—Insolvency—Suppression of Facts—Intention not to Pay.**

Reviewing the facts attending the purchase of goods by a merchant in failing circumstances, but who made no representations to the seller as to his condition, the evidence is held to require the submission to the jury of the issue as to fraud by such purchaser in failing to disclose his insolvency and buying without intending to pay.

Appeal from the County Court of McLennan County. Tried below before Hon. J. W. Baker.

The judgment appealed from was affirmed on March 6, 1907, and the opinion following was pronounced on appellant's motion for rehearing. The trial court gave a peremptory charge to find for defendant.

*Prendergast & Williamson,* for appellant.—Fraud is susceptible of proof almost wholly, by circumstantial evidence and if any facts or circumstances tending to show fraud be introduced in evidence, it is the duty of the court to submit such evidence to the jury for its determination. Ellis v. Rosenberg, 29 S. W. Rep., 519; Potter v. Wheat, 53 Texas, 401; Mitchell v. McLaren, 51 S. W. Rep., 270; Mustain v. Stokes, 90 Texas, 358; Lee v. International & G. N. Ry., 89 Texas, 589; Williams v. Davidson, 43 Texas, 39; Choate v. San Antonio & A. P. Ry., 37 S. W. Rep., 319; Heatherly v. Little, 40 S. W. Rep., 445; Boaz v. Coulter Mfg. Co., 40 S. W. Rep., 866; French v. Vining, 102 Mass., 135; Davis v. Stewart, 8 Fed. Rep., 803; Jaffrey v. Brown, 29 Fed. Rep., 470; Donaldson v. Farwell, 93 U. S., 631; Gainesville Nat. Bank v. Bamberger, 77 Texas, 48; Lowdon v. Fisk, 27 S. W. Rep., 180; Wilmot v. Lyon, 34 N. E. Rep., 720; Talcot v. Henderson, 31 Ohio St., 162; Gavin v. Armistead, 22 S. W. Rep., 431; 14 Am. & Eng. Enc. of Law, 68.

*Brown & Lane* and *Sanford & Denton,* for appellees.—Where, under the evidence, the plaintiff is not entitled to recover, the court may instruct the jury to find for the defendant. Lea v. Hernandez, 10 Texas, 137; Stringfellow v. Montgomery, 57 Texas, 349; Umscheid v. Scholz, 84 Texas, 269.

The mere insolvency of the purchaser, where no fraudulent purpose exists, as also the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and uncommunicated to the vendor, will not vitiate the purchase. Gainesville Nat. Bank v. Bamberger, 77 Texas, 48; Strickland v. Willis, 43 S. W. Rep., 604; Gavin v. Armistead, 22 S. W. Rep., 431.

FISHER, Chief Justice.—In 1905 the appellee Weber was, in the town of LaGrange, engaged in the mercantile business, and on the 10th of November of that year, through a traveling salesman, made an order upon appellants, who were then wholesale dealers engaged in the mercantile business at Waco, for certain goods to be shipped to Weber at LaGrange; part of the goods were to be shipped at once and 'part at the convenience of the sellers. This order was sent in to the appellants by their traveling salesman, and they, on November 16, 1905, wrote a letter to Weber to the effect that the order was received, and the goods would be shipped as requested; and also called his attention to another indebtedness of his to appellant in the sum of $472, which they claimed would be due on December 1. On November 18, 1905, Weber replied to this letter, in effect, stating that only a part of the goods ordered were to be shipped at once and the balance at some time later; and in the letter states "that he did not expect that they would be shipped this year," and calls their attention to the fact that his old account would not mature on December 1, as stated in appellants' letter, but that $285.75 would fall due December 4, and $90.40 would be due December 19, and that $94 would mature December 29, 1905; and concludes this letter with this statement: "I will see that these bills will be paid when they mature. Should you not be able to ship goods as stated on order, kindly cancel the whole order, and oblige."

On the 21st of November, Slayden-Kirksey Woolen Mills replied to this letter, substantially to the effect that the order would be filled as directed. These letters were signed by the Slayden-Kirksey Woolen Mills, but were written by its secretary and treasurer, F. W. Lake. On November 22, 1905, F. W. Lake, as a member of the Advisory Board of the Dallas and Ft. Worth Creditmen's Association, wrote a letter to Weber requesting of him a statement as to his financial condition, and accompanied this letter with the usual blank statement to be filled up and signed by Weber, and which, if done, would purport to show his financial condition. This statement upon its face shows that it was intended for the benefit of Slayden-Kirksey Woolen Mills of Waco, Texas. Weber did not reply to this letter, nor did he prepare and sign a statement. Whereupon, on November 28, Lake wrote another letter to Weber, reminding him of the letter of November 22, and that he had not replied to same, and again requesting him to prepare and fill out the statement as to his financial condition. This letter was not answered by Weber, nor did he make up and forward the statement, as requested; and upon this point Weber admits in his evidence that he had never made any statement of his financial condition to Bradstreet or Dun, and that he did not make a statement to the appellant on the blanks which were sent him, and that he destroyed the letters and blanks and made no reply.

On December 8, 1905, Weber, by check which was paid, remitted to Slayden-Kirksey Woolen Mills on the old indebtedness, $285.75; and in effect stated in a letter that accompanied this remittance that he would pay the balance of the old indebtedness some time during the month. It was not until after this letter and remittance were received by appellant that the goods ordered by Weber were shipped to him. Weber, in effect, admits in his evidence that at the time he made the order for the goods, and when they were received, he was insolvent; but in this connection he says that he expected financial assistance from his brother, and if realized, he expected to pull through; but it appears that on the 27th of December, 1905, he approached his brother for financial assistance and was refused. Thereupon on that day, he executed and delivered, for the benefit of his creditors, a deed of assignment of his goods and merchandise, which included the goods sold to him by appellant. Excerpts of the testimony of Weber upon some of the important questions in the case are as follows:

"At the time I made my general assignment, my liabilities were in excess of $14,000, and my assets consisted of a stock of merchandise which inventoried $7,800, and notes and accounts which were worth between $400 and $500. I had no other assets. In figuring my indebtedness, the goods shipped me by the Slayden-Kirksey Woolen Mills are included as a liability, but their goods which were taken under sequestration were not included as an asset at the time of taking the inventory. At the time I ordered these goods from the Slayden-Kirksey Woolen Mills, on November 10, 1905, I knew my financial condition fairly well, and knew that my liabilities exceeded my assets and that I was insolvent. The only difference in my liabilities and assets between the time I ordered these goods and the time I made

my assignment was that my assets at the time I ordered them were about $9,000 stock of merchandise, and the indebtedness correspondingly greater than my indebtedness at the time of making the assignment. The merchandise I sold was used to decrease my liabilities. I knew that I was insolvent, but I knew that my brother would not push me for what I owed him, and I knew that if I could get $3,000 more money from him, that I could pay all debts as they matured, and I believed that I could pull out. I was very much worried over my financial condition and my business. On the 26th of December, 1905, I went to my brother and made a full disclosure of my financial condition, and he stated that I was in a much worse financial condition than he had any idea that I was in, and asked me how much money it would take for me to pull out, and I told him that I thought I could pull out on $3,000, if he carried his indebtedness. He telephoned Mr. Jake Wolters, at Houston, his attorney, to come to LaGrange. We then continued our conversation, and he did agree to let me have the $3,000, but he did not give it to me. Wolters got to LaGrange the same night, and he, my brother, my son and I had a conference about my condition. I went over the matter fully before Wolters, and my son said, 'Uncle, do not let papa have that money, because you will lose it if you do. I do not believe that he can pull out.' Wolters stated, 'I do not believe so either and you had better not make the loan.' My brother did not lend me the $3,000, and under Mr. Wolter's advice, I executed the general assignment.

"I have never made a statement of my financial condition to Bradstreet or Dun, and I did not make a statement of my financial condition on the blanks which were sent me by F. W. Lake, but destroyed his letters, the blanks, and made no reply to them.

"The goods which I ordered from Slayden-Kirksey Woolen Mills on November 10, were not shipped by them to me until after my check for $285.75, which was sent in my letter of December 8, had been paid on December 11, 1905. The goods were shipped after payment of my check, and I received them a few days after. At the time that I received the letters of November 22 and 28, 1905, from Mr. F. W. Lake, enclosing the blank statement of my financial condition, I did not know Slayden-Kirksey Woolen Mills would not have extended me credit if I had made a true statement of my condition. I might have thought so. I knew that if I disclosed to my creditors my insolvency I could not pull out.  .  .  .

"They did not ship the goods until my remittance of December 8 was sent in and until that check was paid. In the meantime Mr. Lake had written me and requested a statement of my financial condition. I did not give it to him. I knew at that time I was insolvent, and I knew if I made a statement it would show I was insolvent. I did not know Slayden-Kirksey Woolen Mills would not have extended me credit if I made a true statement of my condition."

Lake testified that he, as the representative of appellant, was induced to ship the goods to Weber by reason of the promise of the latter to pay the old account as it fell due, and that he did not know of

Weber's insolvency, and if he had known it the sale on credit would not have been made.

Upon the facts as stated appellant brought suit against Weber and the assignee for a cancellation of the sale and for recovery of the goods which were seized and levied upon by a writ of sequestration sued out by appellant.

The three grounds upon which plaintiffs based their cause of action were (1) false and fraudulent representations by Weber as to his financial condition; (2) a fraudulent concealment of his insolvency; (3) that Weber purchased the goods with the intention never to pay for same. The case below was disposed of by an instruction of the trial court to return a verdict against the appellants, upon which judgment in appellees' favor was rendered.

We have only undertaken to set out the principal incriminatory facts which a jury might consider as having some tendency to establish the issue of fraud, and have omitted from our statement any evidence which might have a tendency to negative the existence of a fraudulent concealment by Weber of his financial condition, or of an intent to defraud the seller in the purchase made by him.

Viewing the case from the appellants' standpoint, three questions arise: First, was there a fraudulent concealment; second, was the purchase made with the intent never to pay for the goods; third, did there exist both a fraudulent concealment and the intent never to pay? There is nothing in the evidence that suggests the issue that Weber made any false representations concerning his financial condition. Therefore, we take it that that question must be eliminated. It is true that he did state in one of the letters quoted that he would pay the debts as they matured; and, in effect, further stated that he would be able to do so, but this did not relate to the debt created by the purchase of the goods in question, but was a reference made to the old indebtedness that was soon to mature. Therefore, there was nothing in this statement that could be taken as an affirmative representation of his financial condition which would operate as a basis for obtaining credit in the purchase of the goods now in controversy.

On the questions upon which the case should have been submitted we will not undertake to say that the evidence is sufficient to establish either of the issues; nor will we say that the entire evidence, as stated in the record, when fairly considered, is not sufficient to acquit Weber of a fraudulent intent or a fraudulent concealment, for we, in the peculiar attitude of this case, are only required to determine whether the probative force of the facts stated have a tendency to establish either of the issues. And if for this purpose any weight, although slight, can be given to the evidence, it is the duty of the trial court to submit the questions raised to the jury. Fitzgerald v. Hart, 17 S. W. Rep., 369. As said before, the evidence does not show a condition relating to a false rating or information by Weber as to his financial condition. Schwartz v. Mittenthal, 50 S. W. Rep., 182. Nor do we believe that the mere insolvency of a purchaser, and his concealment of this fact, necessarily indicates a purpose and intention to defraud, and that such facts,

independent of a fraudulent purpose, will afford grounds of relief. Strickland v. Willis, 43 S. W. Rep., 604. And to justify a recovery by the seller there must exist a fraudulent concealment, or a purchase made with the intention by the purchaser never to pay for the goods. In addition to the two cases cited, these principles will be found illustrated in Walsh v. Looper Hardware Co., 60 S. W. Rep., 630; Willis v. Strickland, 50 S. W. Rep., 160; Hallacher v. Henlein, 39 S. W. Rep., 872, and Boaz v. Coulter, 40 S. W. Rep., 866. In section 906, volume 2, of the third edition of Pomeroy's Equity, the author states the rule as follows:

"The particular case of the buyer on credit who conceals his bad financial condition requires a brief additional mention, because it is the most common species of fraud, and because it involves one or two special rules. As to what constitutes a false representation by such buyer, nothing need be added, except that in this instance especially, the statement of the buyer must be something more than the mere expression of an opinion as to his pecuniary ability. As to what constitutes a fraudulent concealment under these circumstances, there has been some uncertainty and even conflict of decision in determining what matters such buyer is bound to disclose, so that his failure to do so would be a fraud. The following rules may be regarded as settled by the decided weight of authority; they are certainly sustained by courts of the greatest ability and influence: 1. The purchaser when buying on credit is not bound to disclose the facts of his financial condition. If he makes no actual misrepresentation, if he is not asked any questions, and does not give thereto any untrue, evasive or partial answers, his mere silence as to his general bad pecuniary condition, his indebtedness, or even his insolvency, will not constitute a fraudulent concealment. 2. If, however, the former *good* financial condition of the buyer has been known to the vendor through prior dealings or otherwise, and any sudden or complete change has happened to the buyer, such as his sudden loss of property by fire or other accident, or his sudden insolvency or embarrassment by the failure of others, or a general assignment which he has made of all his property, and the like, he is bound to disclose such facts to the vendor previously to the completion of the sale; his *mere* silence with respect to such changes in his condition, even when no questions are asked of him, is a fraudulent concealment. 3. Finally, if at the time he purchases the goods on credit, and fails to disclose his general insolvency, embarrassed condition, or indebtedness, the buyer forms or has in his mind the intention or design of not paying for them, this is a fraud on his part. In other words, a purchase on credit with a preconceived design on the buyer's part, formed at or before the purchase, not to pay for the thing bought constitutes a species of fraudulent concealment."

As illustrating and supporting the text quoted, the following cases are cited: Cary v. Hotailing, 1 Hill, 311, 37 Am. Dec., 323; Bigelow v. Heaton, 6 Hill, 43; Mitchell v. Worden, 20 Barb., 253; Nichols v. Pinner, 18 N. Y., 295, s. c. 23 N. Y., 264; Bell v. Ellis, 33 Cal., 620, which latter case overrules Seligman v. Kalkman, 8 Cal.,

207; Hathorne v. Hodges, 28 N. Y., 486; Brower v. Goodyer, 88 Ind., 572.

It is well here to state that the second reason given in the section quoted has no application to the facts of this case, as it does not appear that there had been any loss of property or sudden change in Weber's financial condition.

It is not likely that the question raised in the assignment of error that complains of the insufficiency of the evidence as to the value of the goods sequestered will arise upon another trial, as doubtless this omission will be supplied.

For the reasons stated, the motion for rehearing is granted and the judgment reversed and the cause remanded.

*Reversed and remanded.*