**GUARDIAN DEVELOPMENT CO. v.
JONES et al.**
No. 11738.

Court of Civil Appeals of Texas. Dallas.
June 22, 1935.

Rehearing Denied Oct. 5, 1935.

Coke & Coke and Julian B. Mastin, all of Dallas, for appellant.

Allen, Underwood & Canterbury, of Tulsa, Okl., and R. G. Storey and E. Taylor Armstrong, both of Dallas, for appellees.

BOND, Justice.

The appellant, Guardian Development Company, a corporation, instituted this suit against the appellees, T. R. Jones, Hill Top Stables, Inc., T. R. Jones, Inc., and Bird-Haven Farms, Inc., to cancel a deed, executed on October 14, 1932, by R. E. Burt, president, under a proper resolution of the board of directors and stockholders of the corporation, to T. R. Jones, conveying 210 acres of land located in Dallas county, Tex., and, in the alternative, for damages.

The ground urged in pleadings and evidence for the cancellation of the deed was a fraudulent concealment, by appellee Jones, of a material fact, which induced the appellant to execute the deed; and, as we view this appeal, the primary contention centers, assuming, as found by the jury, that appellee Jones was guilty of fraud, on whether appellant suffered damages by virtue of such fraudulent act.

The record reveals that the appellant, Guardian Development Company, is a corporation, with R. E. Burt as its president, having a capital stock of $100,000, divided into 1,000 shares, and owned by the Burt family; R. E. Burt owned 360 shares, Mrs. R. E. Burt owned 640 shares, and Mrs. Joe Burt, daughter-in-law of R. E. Burt and wife, owned 90 shares. The 10 remaining shares is held by S. Reid, merely to qualify him to act as secretary. Wood R. Alexander, who participated in the actions hereinafter mentioned, is a son-in-law of Mr. and Mrs. R. E. Burt, having married their only daughter.

In 1930, the appellant agreed with Alexander that he could place improvements on the 210 acres involved in this suit, and use it in operating a riding stable. Between the years 1930 and 1932, Alexander erected stables, a barn, a residence, and other improvements upon the premises, which cost him about $25,000; purchased between 30 and 40 horses, riding equipment, such as saddles, blankets, et caetera, which cost him between $12,000, and $15,000, and obtained a charter for a corporation, named "Bird-Haven Farms, Inc.," into which he transferred, as its only assets, the horses and riding equipment. The business of the Bird-Haven Farms, Inc. (capital stock of which was owned by Mr. and Mrs. Alexander), was the renting of its horses, also training and boarding horses owned by others. In operating the business, Alexander acquired additional acreage, purchasing an adjoining 151 acres for the sum of $16,000 —$12,000 in cash and $4,000 in notes. The legal title to this additional acreage was placed in S. Reid, Reid signing the notes, with the understanding that Alexander was to pay them. The 210 acres and the 151 acres were used as one contiguous tract, through which many bridle paths extended, and on which the Bird-Haven Farms, Inc., conducted its business.

On August 29, 1932, Alexander, being in need of money, debts of the Bird-Haven Farms, Inc., being pressed for payment, a $2,800 note secured by a mortgage on the horses, and the $4,000 notes, secured by vendor's lien on the 151 acres and necessary improvements on the bridle paths, approached Jones for a loan of $7,500. Jones advanced the money, taking Alexander's note therefor, due on May 1, 1933, and, as security therefor, took a transfer of the stock of the Bird-Haven Farms, Inc., with all its rights and interest in the 210 acres, the 151 acres and the horses; exacted of Alexander his resignation as president and manager of the corporation, and secured a transfer of the vendor's lien on the 151 acres. At the same time and as a part of the transaction, Jones and Alexander entered into a written optional contract, which, so far as is here material, provides: (a) That the 151 acres, the 210 acres, and the Bird-Haven Farms, Inc., properties be considered as one unit; (b) that Jones and Alexander have a reciprocal option, to be exercised within two years, to acquire an undivided 50 per cent. interest in all of the properties; (c) that the one exercising the option would be required to equalize the other's investment, i. e., would have to pay what was needed to make the amount paid by each, equal; and (d) that, if and when Alexander should exercise the option, he would be given a $25,000 credit towards the purchase of the 50 per cent. interest for the investments he had made in the properties. The contract evidenced an intention on the part of Jones to make improvements on the property, purchase machinery and equipment, and to acquire title to the 210 acres from the Guardian Development Company, and to the 151 acres from Reid. Alexander informed R. E. Burt, president of the Guardian Development Company, of the terms of the agreement and a proposal to purchase the 210 acres for $50,000.

On September 26, 1932, Jones, having declined to exercise the option to purchase the 210 acres from the appellant for $50,000, presented to Burt, through R. W. Peatross, a real estate agent, a written contract to purchase the land at $43,000, which Burt declined to extend, until importuned to do so by Alexander, representing to him that the reduction from the original proposal would inure to his benefit, by virtue of the existing option between Alexander and Jones. On this assurance, Burt executed the agreement and caused the directors of the corporation to pass a resolution, authorizing him, as president of the corporation, to execute a deed to Jones for the recited consideration of $43,000—$10,000 in cash, $25,000 in Dallas stadium bonds, and the assumption by Jones of an outstanding $8,000 note on the 210 acres of land due the Union Central Life Insurance Company; and, on October 14, 1932, Burt, in accordance with the agreement and resolution of the corporation, executed the deed.

On October 4, 1932, Alexander and Jones, without imparting knowledge to Burt, agreed to cancel their optional contract, destroyed the written memorandum thereof, and agreed that if Jones exercised the option to purchase the 210 acres from the Guardian Development Company, Alexander would claim no interest therein, and that the conveyance would be free of all obligations under the optional agreement of August 29, 1932.

Neither the resolution nor the deed conveying title to the land from the corporation to Jones mentions the contract of Jones and Alexander as a consideration for its execution. The testimony is undisputed

that the resolution, authorizing the execution of the deed, for the recited consideration of $43,000, was as intended by the directors of the corporation; that appellant received all and expected no other than the recited consideration, and, so far as the corporation and its stockholders were concerned, the sale, under the terms of the deed, was a final and complete transaction. Mr. Burt testified that the only interest to him and the corporation was to "see that that option was carried out between Jones and Alexander."

The testimony further reveals, and found by the jury to be true, that, at the time Jones and Alexander entered into the optional agreement, they each intended to carry out its terms, and the subsequent abrogation was mutual between the contracting parties. There is no question raised, if, in fact, it could be done, that Jones practiced any deception on Alexander for the surrender of his rights under the contract. We believe that the law, in this regard, is correctly stated in the case of Wells v. Burroughs, 65 S.W.(2d) 396, 397, wherein the Texarkana Court of Civil Appeals, in a suit to cancel a deed to land for fraudulent promises to erect a gin on the land, and subsequent failure to perform, disposes of the question, as follows: "If the promise and representation to erect a gin on the land was, as seemingly appears, truly made in good faith at the time of the contract of purchase and sale in May, 1928, and the defendant, subsequently, as conclusively appears, changed his mind and failed or refused to perform the promises before the execution and delivery of the deed, then such conduct would not constitute fraud in legal acceptation such as would justify the cancellation of the deed. Selari v. Selari (Tex. Civ. App.) 124 S. W. 997."

■ Furthermore, the rule of law in this state is settled, we think, that, in order for fraudulent representations to be actionable, they must have resulted in some pecuniary damage to the party acting thereunder. A fraud which causes no injury is not legally cognizable, and courts of law or courts of equity will not exercise their power for the purpose of enforcing moral obligations or correcting unconscientious acts which do not result in some damage, loss, detriment, or injury to the complaining party.

In the case of Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 1037, 258 S. W. 462, 51 A. L. R. 1, by the Supreme Court, followed and cited with approval in the case of Blankenship v. Lusk (Tex. Civ. App.) 77 S.W.(2d) 341, Judge Randolph, speaking for the court, said: "It is elementary that where a false representation is charged to have misled a party into signing a contract, he must not only show the falsity of the representations, that he was misled by such and induced to sign the contract thereby, but he must also show that he has been damaged and the extent of his damages."

Also see 20 Texas Jurisprudence, par. 39, p. 68; Bryant et al. v. Vaughn (Tex. Sup.) 33 S.W.(2d) 729; Lay v. Midland Farms Co. et al. (Tex. Civ. App.) 8 S.W. (2d) 230; Fortune v. Midland Farms Co. (Tex. Civ. App.) 8 S.W.(2d) 236; Abernathy et al. v. Brashear (Tex. Civ. App.) 48 S.W.(2d) 393; Bauder v. Johnson (Tex. Civ. App.) 36 S.W.(2d) 1112; Johnson v. Magnolia Petroleum Co. (Tex. Civ. App.) 75 S.W.(2d) 283; Blankenship et al. v. Stricklin et ux. (Tex. Civ. App.) 77 S.W. (2d) 339.

■ Such being the case, the optional contract, allowing Alexander to repurchase into the enterprise upon the happening of a given contingency, i. e., Jones exercising the option to purchase the 210 acres from the appellant and 151 acres from S. Reid, was not for the benefit of the appellant or the stockholders of the corporation, but for the benefit of Alexander, and neither the optional contract between the corporation and Jones, nor the deed from the corporation to Jones, was so framed as to deprive Alexander of the power to enter into a subsequent contract abrogating his rights under his agreement. The deed sought to be rescinded having been delivered to the grantee, and accepted by him as performance of the contract for the sale and purchase of the land, must, in law, be regarded as the final obligation of the agreement of the parties, and the sole repository of the terms on which they agree. 14 Texas Jurisprudence, 875. It was the duty of appellant, acting through its president, who was a man of large business affairs, once mayor of the city of Dallas, and a managing officer of large financial enterprises, to have the option agreement, or reference thereto, incorporated in the deed, and the failure to so incorporate the option agreement in the deed, under the circumstances, is sufficient, we think, to prevent the appellant from now saying that the prior nego-

tiations were not merged in the deed itself.

Alexander was the only person interested in the performance of his contract, and could have maintained an action in his own name, which, in fact, he has done for its enforcement. However much Mr. Burt and other members of the Burt family, owning the stock of the appellant corporation, may have been interested in the welfare of Alexander, personally, or because he had married Burt's daughter, they or the corporation had no legal interest in Alexander's contract and could suffer no injury for its abrogation; therefore, cannot be heard to complain because Alexander. saw fit to cancel the contract in which he alone was legally interested in its enforcement.

As we view the record, it does not raise any issue of actionable fraud, of which appellant could legally complain. The cause of action, if any, accrued to Alexander, and was not such, if there had been any damage, that could be maintained by appellant. True enough, while Burt considered the value of the land at $100,000 to $125,000 and the jury valued it at $76,500, yet, the corporation parted with all of its right, title, and interest therein, reserving nothing unto itself, thus losing nothing, and expecting nothing other than the recited consideration in the deed. The stockholders, the Burt family, suffered the disappointment of an anticipated benefit accruing to the son-in-law, Alexander, which they surrendered, and for which the corporation had no redress for its loss. The trial court should have sustained appellees' motion for an instructed verdict.

The view we have taken of this appeal, as expressed above, makes a discussion of appellant's further assignments, based on trial errors, unnecessary; they are overruled, and the judgment of the lower court is affirmed.

Affirmed.

### On Motion for Rehearing.

PER CURIAM.

Rehearing denied.

LOONEY, Justice (dissenting).

Adhering to the original decision, the majority overrules appellant's motion for rehearing, but as I have reached the conclusion that the court erred in affirming the judgment, will state, as briefly as is practicable, the reasons for my dissent.

The nominal plaintiff in the suit is the corporation, the Guardian Development Company, but the beneficial owners of the cause of action, the real plaintiffs, are members of the Burt family. The stock of the corporation ($100,000) is owned by Mr. and Mrs. R. E. Burt and their daughter-in-law, Mrs. Joe Burt, a few qualifying shares being held by Mr. Reid, secretary.

I think the findings of the jury show indisputably that the main consideration for the conveyance of the land in question by the Burts to Jones (using the corporation simply as an instrument) was the interest they felt in the welfare of the son-in-law, Alexander, and, of course, his wife, the only daughter of the family; in other words, love and affection was the basic consideration, a sentiment the corporate entity was incapable of entertaining. So, to properly appraise the moving consideration for the deed so sought to be canceled, the fiction of the corporate entity should, in my opinion, be disregarded. The corporation was simply the double of the three Burts just mentioned, who were the beneficial owners of its entire property and assets, with absolute control (rights of creditors not involved), and authorized, using the corporate entity as their instrument, to convey the land upon just such consideration, and for such purposes as moved them as individuals to take the action. The facts present no aspect different from what would have been presented if the corporation had never existed, and the Burts, as individuals, were plaintiffs. The concept of a legal entity, being a mere fiction, should not be extended to lengths that defeat equities existing in favor of the individual stockholders. This proposition seems to be well supported by the authorities. See Bush v. Gaffney (Tex. Civ. App.) 84 S.W.(2d) 759, 762, authorities cited; Taylor Feed Pen Co. v. Taylor Nat. Bank (Tex. Civ. App.) 181 S. W. 534, 538; Home Fire Ins. Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. Rep. 716; 7 R. C. L. p. 27, § 4, notes; First Nat. Bank v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am. St. Rep. 904; Swift v. Smith, 65 Md. 428, 5 A. 534, 57 Am. Rep. 336; Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 56 A. L. R. 734, 743; D. N. & E. Walter & Co. v. Zuckerman, 214 Cal. 418, 6 P.(2d) 251, 79 A. L. R. 329.

No contention is made that the findings of the jury are not supported by evidence, and in so far as material, are to the ef-

fect that Jones induced Alexander, son-in-law of Mr. and Mrs. Burt, to say to Burt that, if he would execute a sales contract, and deed the 210 acres, that he (Jones) would give Alexander two years from August 29, 1932 (date of the option contract between Jones and Alexander), to acquire a 50 per cent. interest in the 210 acres and other properties involved in the option contract, and would allow Alexander credit for $25,000 (the value of improvements placed by Alexander on the property) when he exercised the option, and that he (Jones) would advance necessary amounts to pay notes owing by Alexander as part purchase money for the 151 acres which was also included in the Jones-Alexander option contract. The jury found that these representations were made by Jones with the expectation and intention that Alexander would communicate same to Burt, for the purpose of inducing him to execute the sales contract and deed to the 210-acre tract; that Alexander did make such representations to Burt, who, believing and relying on same, executed the sales contract, and later the deed; that at the time these representations were made they truly and correctly described an existing situation, but were not true, and the prior situation did not exist when Burt, on October 14, 1932, executed the deed conveying the 210 acres to Jones, in that, the option agreement between Jones and Alexander had been previously, on October 4, 1932, abrogated, of which fact Burt had no knowledge, nevertheless was permitted by Jones to execute the deed under the belief that the option agreement between him and Alexander was still in existence; thus in equity rendering the representations originally true, deceptive and fraudulent. Burt had valued the land at $100,000, but the jury found it to be $76,500, so it appears that, by reason of representations, promising material benefits to his son-in-law, Burt was induced to convey the land for about half its market value.

Obviously, the action is one to rescind the land trade between plaintiff and defendant, and is in no sense based on the Jones-Alexander option contract, that being simply an incident, evidencing the collateral agreement that constituted a material part of the consideration for the conveyance sought to be rescinded. I do not think it was necessary that this collateral agreement should have been set up or referred to in the written contract between plaintiff and defendant, in order to admit proof of its existence as an inducing consideration. In Downey et al v. Hatter (Tex. Civ. App.) 48 S. W. 32, 35, the rule is stated thus: "Such evidence is admissible to show an independent agreement made as an inducement to the written contract, and it is not necessary that the written contract should contain any reference to the agreement to authorize the admission of the evidence." The rule is also announced in 22 C. J. p. 1253, as follows: "The rule admitting parol evidence of a collateral agreement is especially applicable where such agreement constituted a part of the consideration of the written agreement, or operated as an inducement for entering into it * * *." Also see 17 Tex. Jur. p. 802, § 358, p. 825, § 370, p. 826, § 371, and authorities cited under these sections. So, I cannot accept as correct the pronouncement in the original opinion, adhered to by the majority, that "It was the duty of appellant, acting through its president, who was a man of large business affairs, once Mayor of the City of Dallas, and a managing officer of large financial enterprises, to have the option agreement, or reference thereto, incorporated in the deed, and the failure to so incorporate the option agreement in the deed, under the circumstances, is sufficient, we think, to prevent the appellant from now saying that the prior negotiations were not merged in the deed itself."

As before shown, the jury found that the inducing representations made by Jones through Alexander to Burt described a true situation when originally made, but that later and before the trade was consummated the situation ceased to exist, of which fact Burt, being ignorant, was permitted by Jones to execute the deed and consummate the trade, without being enlightened as to the changed conditions. In view of the changed conditions, the question presented is: Did Jones owe Burt any duty? The authorities are unanimous in saying that he did. The doctrine is announced in Bower, on Actional Non-Disclosure, at page 128, as follows: "In the latter type of case, where the statement made in the first instance was in fact true when made, that is to say, in substantial accord with the material facts then existing, but, by reason of supervening events becomes false before the contract is concluded, that is to say, becomes in substantial disaccord with the complete facts existing at the latter date, it is no less clear and well established that the party charged,

if and when he acquired knowledge of the supervening facts, comes at once under an obligation to reveal them to the other party, by way of correction or modification of his original statement, and, if he fails to discharge this obligation, he is liable at least to the extent to which a non-disclosing party is ordinarily liable, that is, to have the contract avoided * * *." In Slayden-Kirksey Woolen Mills v. Weber et al., 46 Tex. Civ. App. 433, 102 S. W. 471, 473, Judge Fisher made the following comment: "If, however, the former good financial condition of the buyer has been known to the vendor through prior dealings or otherwise, and any sudden or complete change has happened to the buyer, such as his sudden loss of property by fire or other accident, or his sudden insolvency or embarrassment by the failure of others, or a general assignment which he has made of all his property, and the like, he is bound to disclose such facts to the vendor previously to the completion of the sale. His mere silence with respect to such changes in his condition, even when no questions are asked of him, is a fraudulent concealment." Also see Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; 2 Pomeroy's Equity Jr. (4th Ed.) p. 1838, § 888; 3 Williston on Contracts, p. 2664, § 1497; 14 Am. & Eng. Enc. of Law, p. 75.

The court submitted an issue as to plaintiff's negligence in failing to ascertain, before conveying the land to Jones, that the Jones-Alexander option agreement had been abrogated. In answer to issues Nos. 42A and 42B, the jury found that Burt was negligent in this respect, and that such negligence was the proximate cause of the execution of the sales contract and deed in question. The law of negligence, in my opinion, was not invoked by the facts, hence that issue should not have been submitted in any form. A representee owes no duty to the representor to be circumspect or active to detect his fraud or deceit; this being true, negligence could not exist, in the absence of a duty unperformed; in other words, the party deceived cannot be chided because he believed and acted upon deceptive representations.

In Hoyt v. First Nat. Bank (Tex. Civ. App.) 247 S. W. 637, 644, the court said: "Whatever the rule may be in other jurisdictions, we think it well settled in this state that one guilty of such fraud cannot defeat a recovery based thereon by the defense that the one whom he has thus defrauded has been guilty of negligence in failing to discover the fraud. Some of the decisions already cited clearly hold such to be the rule, and we think they are supported by the soundest elementary principles of equitable estoppel. * * * 'It is clear, we think, under the authorities, that it was not the duty of plaintiffs to make any investigation as to the truth or falsity of the statements and representations made to them concerning the bonds. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Griffeth v. Hanks & Collins, 46 Tex. 217; Hall v. Grayson County Nat. Bank, 36 Tex. Civ. App. 317, 81 S. W. 762.'" Labbe v. Corbett, 69 Tex. [503], 508, 6 S. W. 808; Sanders v. Hickman (Tex. Civ. App.) 235 S. W. [278], 280; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957.

The jury also found that the reasonable cash value of the improvements placed upon the 210-acre tract of land by defendant, subsequent to October 14, 1932 (date of his deed), and prior to the institution of the suit, was $15,000. By appropriate assignments, plaintiff challenges the sufficiency of both plea and proof to authorize recovery by defendant of valuable improvements, contending that there was no showing that the land had been enhanced in value in any amount by reason of the alleged improvements. Assuming, however, that the plea is sufficient and the proof adequate to support the finding of the jury as to the value of the improvements, yet the question remains, Would defendant, in any event, be entitled to reimbursement for improvements placed upon the land, in view of the finding that his title was acquired as the result of deceit in failing to disclose to Burt the abrogation of the Jones-Alexander option contract? In view of the authorities, I do not think so. A similar situation was presented in Chambers v. Wyatt (Tex. Civ. App.) 151 S. W. 864, 866, with reference to which the court said: "As to those assignments relating to the plea of estoppel and the claim for the value of the improvements, it is sufficient to say that if the plaintiff was entitled to recover it was by virtue of fraud practiced by the defendant in obtaining a conveyance of the premises; and, his possession and apparent title being based upon his own fraud, the fact that he went into possession as a result of that fraud, and while wrongfully in possession thereof made such improve-

ments and asserted such ownership, would give him no right to claim the value of his improvements, nor to assert an estoppel. Neither estoppel, nor a claim for valuable improvements made in good faith, could possibly be predicated upon rights which originated in fraud." Also to the same effect, see Garcia v. Zamora (Tex. Civ. App.) 2 S.W.(2d) 907, 908; Knox v. Earbee (Tex. Civ. App.) 35 S. W. 186, 189 (writ denied); Jinks v. Moppin (Tex. Civ. App.) 80 S. W. 390, 393; 7 Tex. Jur. par. 79, p. 1015; Notes, 81 Am. St. Rep. 179.

The original opinion announced a doctrine with which I am in perfect accord, that, in order for a fraudulent representation to be actionable, it must have resulted in some pecuniary loss to the party acting thereon. But, applying this doctrine, the opinion states that plaintiff suffered no pecuniary loss, saying in this connection that, "True enough, while Burt considered the value of the land at $100,000 to $125,000, and the jury valued it at $76,500, yet the corporation parted with all of its right, title and interest therein, reserving nothing unto itself, thus losing nothing, and expecting nothing other than the recited consideration in the deed. The stockholders, the Burt family, suffered the disappointment of an anticipated benefit accruing to the son-in-law, Alexander, which they surrendered and for which the corporation had no redress for its loss." To this conclusion I cannot agree. The jury found that, by deceit, plaintiff was induced to convey property, of the market value of $76,500, for only $38,000; also, in answer to a special issue, found that plaintiff suffered pecuniary damages separate and apart from any damages which Alexander might have suffered. I think plaintiff's damage was indisputably established, and that the majority is in error in holding that plaintiff's damage is "sentimental."

In answer to an issue submitted, the jury also found that, in the transactions relating to the sale of the 210 acres of land by plaintiff to defendant, Wood R. Alexander was acting for and on behalf of plaintiff corporation. On first impression, this finding was somewhat disconcerting, but in view of other fact findings, I think the finding should be regarded as immaterial. The jury found, in effect, that, in all negotiations resulting in the execution by plaintiff of the sales contract and deed, Alexander acted for and at the behest of Jones and in a sense for himself, in communicating with Burt, who it seems alone represented and spoke for the corporation. Agency is established by the facts and circumstances concerning transactions between the alleged agent and principal, and it is a matter for the court or jury to determine whether or not, in a particular instance, such agency exists; hence, in the absence of some fact or circumstances to which a finding of agency is referable, necessarily the same would be but a naked, unsupported conclusion. The finding that in the premises Alexander acted for the corporation is not, in my opinion, supported by the facts, and is inconsistent and out of harmony with the meaning of all other findings bearing upon the issue. Besides, in answer to special issue No. 60, the jury found that Alexander was not a party to, and did not know of the fraudulent representations charged to have been made by defendant Jones. So I think the answer of the jury that Alexander acted for the corporation in the premises should be disregarded.

Plaintiff presents a number of assignments based upon alleged errors committed by the court during the progress of the trial. I have refrained from commenting on these, for the reason that, if well taken, they would simply require reversal and remand, whereas, in my opinion, as heretofore shown, the case should have been reversed and rendered.

For the reason stated, I think plaintiff's motion for rehearing should have been granted, and the judgment of the trial court reversed and judgment here rendered for plaintiff, rescinding the land trade in its entirety, requiring plaintiff to do equity by restoring to defendant the purchase money paid, together with interest and dividends on stock, if any collected, but as it appears that defendant has been in possession, using and enjoying the property since October 14, 1932, he should be required to account for the reasonable value of its use. Therefore, the case, in my opinion, should have been remanded to the trial court, with direction to ascertain the facts and adjust these equities.