**H. E. PELTON, Appellant,**

v.

**Edith May WITCHER et al., Appellees.**

**No. 15949.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 12, 1958.

Rehearing Denied Jan. 16, 1959.

McDonald, Sanders, Nichols, Wynn & Ginsburg and Atwood McDonald, Fort Worth, for appellant.

Charles L. Morgan, Fort Worth, for appellees.

BOYD, Justice.

Appellees Edith May Witcher, Loftin V. Witcher, Jr., and Ann Witcher Giabbai, joined pro forma by her husband, Louis Giabbai, recovered judgment canceling a power of attorney and assignment of interest which they executed in favor of appellant H. E. Pelton.

Appellees, by will and inheritance, succeeded to all the estate of H. Witcher and his wife, Annie Loftin Witcher, and their son, Loftin V. Witcher, all deceased, Edith May Witcher being the widow and Loftin V. Witcher, Jr., and Mrs. Giabbai being the children of Loftin V. Witcher.

The instrument in question empowered appellant to investigate demand, collect, recover, and receive all property, real, personal, or mixed, and all money due or which might become due from any of such property which appellees owned or might be entitled to receive by virtue of being the heirs of H. Witcher, Annie Loftin Witcher and Loftin V. Witcher. Appellant was further empowered to execute orders, receipts, releases, and to have filed and prosecuted in the names of appellees suits to recover any of said property. The instrument assigned, quitclaimed and conveyed to appellant an undivided one-half interest "in and to any and all monies accrued and to accrue and all property be it real, personal, or mixed, and interests in property" which appellees owned or in which they had any interest by virtue of being the heirs of H. Witcher, Annie Loftin Witcher and Loftin V. Witcher, except any property located in Tarrant, Smith and Fayette Counties, Texas. The instrument provided that all costs of investigation and collection, including but not limited to attorney's fees and costs of litigation, would be paid by appellant out of his undivided one-half interest therein assigned.

Appellees alleged in substance that, (1) appellant falsely represented to them that unless they gave him the power of attorney and assignment they stood to lose the property by limitation; (2) appellant falsely represented that if appellees would execute the instrument he would promptly supply them with photostatic copies of all documents and correspondence involved and of everything that transpired while he was acting for them in recovering the estate; (3) it was appellant's duty, acting in a fiduciary capacity, to disclose all details as to the source and disposition of funds collected and the location and character of the properties from which they were derived, which he fraudulently refused to disclose; (4) fifty per cent interest was wholly incommensurate with the services to be rendered under the agreement, and such provision for compensation was unconscionable.

A jury was waived and the court filed findings of fact and conclusions of law.

It was found that the property involved was 1/16th of the oil royalty, and gas rental or royalty, due and to be paid under the terms of an oil and gas lease covering 2,400 acres in Winkler County, and that appellant made the following representations to appellees, which they relied upon:

"A. That if plaintiffs would execute the power of attorney and assignment in his favor, defendant would then make full dis-

closure of the nature and description of the property involved which property had been inherited by plaintiffs from H. Witcher and his wife, Annie Loftin Witcher, both deceased.

"B. That if plaintiffs did not forthwith give power of attorney and assignment to defendant, plaintiffs stood to lose the property by limitations.

"C. That defendant would furnish plaintiffs with photo-static copies of everything he did under the power of attorney.

"D. That the one-half interest in the property and all recoveries as provided in said power of attorney and assignment was a reasonable and customary fee.

"That all of said representations above— A, B, C and D were falsely and fraudulently made with no intention of carrying them out for the purpose of inducing plaintiffs to execute the power of attorney and assignment of interest hereinbefore quoted and that plaintiffs executed said instrument believing in said representations, that is, A. defendant did not disclose the nature or description of the property involved within a reasonable time after said instrument was executed and in fact deliberately withheld same until time of trial of this case on March 6, 1958, B. the representations as to limitations running against the property involved whereby they stood to lose the property was made as a statement of fact, C. Defendant never furnished photo-static copies of anything at any time until during the trial of this case, and D. the fee charged of one-half interest in the property involved, past, present and future was and is not reasonable and customary but on the other hand is exorbitant, unreasonable and unconscionable in a court of equity, * * *."

Upon these findings, the court concluded that appellees were entitled to a rescission of the contract.

Appellant contends that there was no evidence, and that the evidence was insufficient, to support the finding that appellant falsely represented that appellees would lose their property by limitation if they did not execute the power of attorney; that there was no evidence, and the evidence was insufficient, to support the findings that appellant represented that he would furnish appellees with photostatic copies of all instruments or that such representation was material or that it induced the appellees to execute the power of attorney; that there was no evidence, or that the evidence was insufficient, to support the finding that fifty per cent interest in the property as compensation was unconscionable; and that it was error to conclude that such representations as were made by appellant furnished sufficient grounds for canceling the power of attorney.

Appellant is in the oil, investigation, and collection business. Early in 1956, while checking records in Winkler County, he found evidence that there was some mineral interest in that county in the name of H. Witcher. He later learned that H. Witcher was deceased and that appellees had succeeded to his estate.

Appellant contacted Mrs. Witcher by telephone in the summer of 1956 and told her that he had found some property which belonged to her through H. Witcher's estate. She invited appellant to come to her home and discuss the matter. He refused to tell her the location, nature or extent of the "estate," but said that he would undertake to recover it for fifty per cent as compensation. She declined his proposition, and the interview ended. There were other telephone conversations between them, and Mrs. Witcher told appellant that she "was going to attempt to track down this estate." She wrote relatives in Georgia and learned that they had tried to locate property belonging to H. Witcher, but "had run into so many obstacles, legal expense, and so forth, that they finally dropped it." She made other attempts to locate some of the estate, "whatever it was," and "wasn't getting anywhere." Negotiations between her, Loftin V. Witcher, Jr., and appellant were resumed, and appellant submitted two

contracts, neither of which was agreed to. Finally, the instrument in question was prepared by Mrs. Witcher's attorney, and was executed by all the parties.

Gulf Oil Corporation, Phillips Petroleum Company, and Standard Oil Company of Texas were running oil from the land in which appellees owned a mineral interest. Appellant convinced Gulf that appellees owned ⅟₁₆th of the royalty and collected from Gulf $6,979.83 and paid or tendered one-half of that amount to appellees. He undertook to collect appellees' share from Phillips and Standard, but up to the date of the trial both had declined to pay anything. Appellant has employed attorneys to prosecute the claims against Phillips and Standard. He procured an abstract of title to the property, consisting of more than 2,100 pages, and has incurred transportation and other expenses in connection with the work.

There was evidence as to the amount of oil runs, taken from records of the Railroad Commission, which indicates that should appellees' ⅟₁₆th interest be established in the runs made by Phillips and Standard, it would have amounted to approximately $88,000 at the time of the trial.

■ We are unable to agree with the trial court that appellant's statement to appellees that they stood to lose their property by limitation constituted such fraud as would vitiate the contract. It appears to have been the expression of a legal opinion, which ordinarily is not actionable. But if it were a representation of fact, it was not shown to have been false or incorrect. We do not know of any property, not in the possession of the owner, which cannot be lost by limitation. We think limitation was a matter about which appellees should have been, and were, concerned. Mrs. Witcher testified that "certainly" it was highly probable that limitations could run out."

■ Appellant testified that a fifty per cent interest in the property was the fair, reasonable and customary compensation for a person who found and recovered such property and bore all expenses, including court costs and attorney's fees. There was no testimony from any other witness on the point. We think the evidence was insufficient to support the finding that the contract for compensation was unconscionable.

Although appellant denied that he promised to furnish photostatic copies of anything, or to make any disclosure of the nature and location of the property, the evidence supports the findings that the promises were made, that appellees believed them, and that they were not carried out in a reasonable time. The question presented is whether appellant's failure in this regard affords a sufficient ground for canceling the instrument.

■ In some jurisdictions it is held that a promise to do something in the future, though unperformed, is not actionable. This holding, however, seems to be against the weight of authority; which is, we think, that a promise to do something in the future, if material, if made without the intention to perform, which induced the execution of the contract, and the failure to perform which resulted in injury to the parties relying upon such promise, may constitute actionable fraud. This seems to be the rule in Texas.

■ However, in this State the general rule has been announced in a great number of cases that any misrepresentation inducing the execution of a contract will not constitute grounds for rescission unless the reliance thereon results in injury to the other party. Moore v. Cross, 87 Tex. 557, 29 S.W. 1051; Guardian Development Co. v. Jones, Tex.Civ.App., 86 S.W.2d 466; Johnson v. Black, Tex.Civ.App., 197 S.W. 2d 523; 20-A Tex.Jur., p. 115, sec. 58, and authorities there cited.

■ It was not shown that appellees suffered any damage by reason of appellant's failure to furnish photostatic copies

"of everything he did under the power of attorney" or by his failure to make full disclosure within a reasonable time of the nature and description of the property involved. Mrs. Giabbai did not testify. Mrs. Witcher and Loftin V. Witcher, Jr., both testified that they were not contending that appellant had collected any money or interests that he had not paid over or tendered. "A fraud which causes no injury is not legally cognizable, and courts of law or courts of equity will not exercise their power for the purpose of enforcing moral obligations * * *." Guardian Development Co. v. Jones, supra [86 S.W.2d 468].

For the reasons pointed out, the judgment is reversed and the cause remanded.

RENFRO, J., not participating.